WILSON et al. v. SEYMOUR et al.

(Circuit Court of Appeals, Eighth Circuit. November 2, 1896.)

No. 740.

JUDGMENT AGAINST CORPORATIONS—CONCLUSIVENESS UPON STOCKHOLDERS.
    Stockholders of a corporation are estopped from alleging that a decree
establishing a vendor's lien upon corporate property should not be en-
forced because the vendor had waived the right to a lien by certain rep-
resentations made to them before they became stockholders, when it ap-
pears that they were aware of the proceedings resulting in the decree,
and yet failed to insist at the time that the vendor had waived such right.
Jones v. Bolles, 9 Wall. 364, distinguished.

Appeal from the Circuit Court of the United States for the Dis-
trict of Colorado.

This suit, which was a bill filed by Alexander Wilson, Robert Mure McKerrell,
and William Brown, the appellants, against Ellen R. Seymour and William G.
Pell, the appellees, grows out of the following facts: Some time prior to August
18, 1887, Ellen R. Seymour and William G. Pell, the appellees, being the owners
of the Slide and Spur mining claims located in Boulder county, Colo., had entered
into an agreement with John Haldeman, of London, England, for the sale of
said mining claims at the price of $750,000; $25,000 thereof to be paid in cash
one week after the receipt of a certain report concerning said mining claims, and
the balance to be paid within two months thereafter, one-half thereof in cash,
and one-half in the stock of a company that was to be organized in England to
purchase and work said mining claims. Such a corporation, termed "The Slide
and Spur Gold Mines, Limited," was afterwards organized under the laws of
Great Britain with a capital stock of £400,000 sterling, divided into 400,000 shares
of £1 each; and on May 16, 1887, an agreement was entered into by John Halde-
man with Harry Edward Gilbert, the latter of whom acted for and in behalf
of said company, to sell the aforesaid mining claims to said company for the sum
of £375,000, which was to be paid as follows: £85,000 in cash within 14
days after the first allotment of shares in said company, £133,000 in fully
paid up shares of said company, and £157,000 in cash, or in fully-paid shares
of stock of said company, at the option of the directors of said company. Prior to
August 18, 1887, said John Haldeman had paid to the appellees, on account of
the aforesaid purchase of said mines, about $58,444, but was unable to make
further payments. On August 18, 1887, J. Fenton Seymour, the husband of
Ellen R. Seymour, one of the appellees, who was then in England, acting for
and in behalf of both of the appellees, entered into a further agreement, with John
Haldeman, of the following tenor:

"Memorandum of agreement made this 18th day of August, 1887, between John
Haldeman, of * * * the city of London, and J. Fenton Seymour, of Denver,
Colorado, in the United States of America, acting for himself and partners, the
owners of the Slide and Spur gold mines, situate in Boulder county, Colorado,
United States of America.

"The said John Haldeman agrees to pay forthwith the sum of ten thousand
pounds sterling in addition to twelve thousand five hundred pounds already paid
on account of the purchase money of the said mines, such sum of ten thousand
pounds to be paid through Messrs. Wells, Fargo & Company (who now hold the
deeds of the said property in escrow), and to be held by them and paid over to
the said J. Fenton Seymour upon the titles of the said mines being registered
in the name of the Slide and Spur Gold Mines, Limited, free from all charges and
incumbrances; and the said J. Fenton Seymour hereby undertakes and agrees to
register the titles as above upon the said ten thousand pounds being deposited
with Messrs. Wells, Fargo & Company. The said J. Fenton Seymour hereby
undertakes and agrees to have the Slide mine worked to its full capacity, and,
after the due and legal registration of the title to the said company, he further
agrees that the returns from the said mine shall be cabled weekly to the said

company in the form of cables sent herewith, it being understood and agreed that the money value of the first weekly returns so cabled shall not be less than the sum of two hundred pounds sterling, and that each successive weekly return shall show a moderate increase over that sum. The said J. Fenton Seymour herein undertakes and agrees to take the control of the management of said property until the payments hereinafter mentioned are completed, and it is understood and agreed that he shall retain such control until the said payments are completed. The said John Haldeman agrees that 375,000 shares of one pound each in the above company shall be transferred to Mr. Clarence Preston Elder, as trustee, and deposited with Messrs Wells, Fargo & Company in London, to the intent that the said shares shall be held as security for the due performance of the following conditions, viz.: First, the payment of ten thousand pounds in addition to the above-mentioned twenty-two thousand and five hundred pounds within three days * * * after the receipt of the third successive weekly return from the mine as hereinbefore mentioned; and, second, the balance of 45,000 pounds at the expiration of ten days after the receipt of eight successive weekly returns of the nature and value above specified. Upon the completion of the above-mentioned payments, the said J. Fenton Seymour hereby undertakes and agrees to release the above-mentioned three hundred and seventy-five thousand shares, less seventy-seven thousand five hundred, to which he is entitled, and also less the number of shares sold with the consent and under the supervision of the aforesaid Clarence Preston Elder, acting for the said J. Fenton Seymour. In case the weekly returns cabled from the mine shall from any cause fall below the sum of two hundred pounds sterling per week, then in that case such returns shall not count, but the time for paying the second ten thousand pounds and the balance of forty-five thousand pounds shall be extended pro rata; but, should the successive weekly returns amount to two hundred pounds sterling per week, * * * with a moderate increase weekly as hereinbefore mentioned, and the said John Haldeman shall make default in the payment of the balance of forty-five thousand pounds, then in that case the said J. Fenton Seymour shall have the right to forfeit the amounts already paid and to claim the above-mentioned 375,000 shares. As witness the hands of the said parties the day and date first above written.

"J. Fenton Seymour.
"Jno. Haldeman."

When the aforesaid agreement was executed, it was understood that the money to make the first payment of £10,000 therein referred to was to be obtained from Robert Mure McKerrell and William Brown, the appellants, who were sometimes designated as the "Scotch Syndicate," and on the following day, to wit, August 19, 1887, the following agreement was entered into:

"Minute of an agreement between J. Fenton Seymour and Clarence Preston Elder, both of Denver, United States of America, and Robert Mure McKerrell, of Hillhouse, Ayrshire, and William Brown, Solicitor, Hamilton, Lanarkshire.

"Whereas, by an agreement made on the 18th day of August, 1887, between said J. Fenton Seymour, for himself and others, owners of the Slide and Spur gold mines in Boulder county, Colorado, United States of America, of the one part, and John Haldeman, of * * * London, of the other part, it is stipulated and agreed that 375,000 fully paid up shares of one pound each, of and in the Slide & Spur Gold Mines, Limited, are to be issued by the said company to the aforesaid John Haldeman in payment in full for the said mines, against a clean transfer of the property to the company free of all incumbrances and liabilities whatsoever, and the due registration of the said transfer, and which shares are immediately upon the same being so issued to be transferred to the said Clarence Preston Elder, a director of the company, as trustee for behoof of all concerned, and the said shares are to be then deposited with Wells, Fargo & Company, merchants, London, in the name of the said Clarence Preston Elder, as a guaranty for the fulfillment by the said John Haldeman of the terms of said agreement so far as incumbent upon him, all as fully set forth in the said agreement: Now it is hereby specially covenanted and agreed that, notwithstanding the terms of the aforesaid agreement, 75,000 fully-paid shares of one pound each * * * of the said total number of 375,000 shares shall be held by the said Clarence Preston Elder, and the said Wells, Fargo & Company, for and on account of the said Robert Mure McKerrell and William Brown, and the said 75,000 shares shall be

delivered and transferred to them or their nominees immediately upon the cash payment mentioned in the aforesaid agreement being received by the said J. Fenton Seymour, or his heirs and successors, or his or their agent; and further, it is hereby specially provided and agreed that, in the event of the terms of the aforesaid agreement not being implemented by the said John Haldeman, and, in consequence thereof, the said shares deposited with Wells, Fargo & Company, or part thereof, becoming claimable by or on account of the said J. Fenton Seymour, or his heirs or successors, yet, nevertheless, the said 75,000 shares in that event shall be forthwith delivered and duly transferred by the said Clarence Preston Elder and Wells, Fargo & Company to the said Robert Mure McKerrell and William Brown or their nominees, notwithstanding any failure on the part of the said John Haldeman to implement the said agreement or any portion of the same.                                                      J. F. Seymour.
                                    "Clarence P. Elder.
                                    "Robert Mure McKerrell.
                                    "William Brown."

On September 6, 1887, the first payment of £10,000 mentioned in the agreement of August 18th was made to the appellees, and on the same day the aforesaid mining claims were conveyed to the Slide & Spur Gold Mines, Limited. On September 10, 1887, on the due organization of said company, the aforesaid contract of August 18, 1887, between J. Fenton Seymour and John Haldeman was laid before the board of directors of the company, and was by them approved, and thereupon, by the action of the board of directors, the contract made by Harry Edward Gilbert in behalf of said company on May 16, 1887, with said John Haldeman, was so modified that Haldeman was to receive for the mining claims an allotment of 375,000 shares of fully-paid stock in the company, in lieu of the money and stock previously agreed to be paid. Subsequent to September 10, 1887, 375,000 shares of the stock of said Slide & Spur Gold Mines, Limited, were issued and placed in the hands of Clarence P. Elder, on the trusts specified in the aforesaid agreement of August 18, 1887, but Haldeman made no further payments in addition to the payment of £10,000, which latter sum was advanced by the Scotch syndicate. Matters remained in this condition until about December 15, 1888, when Alexander Wilson, one of the appellants, made a further payment to the appellees in the sum of £3,500 sterling. This latter payment by Wilson appears to have been made upon a further understanding had between the parties, which was entered into on or about October 5, 1888, to the effect that when the payment of £3,500 was made, Clarence P. Elder should deliver to the Scotch syndicate the 75,000 shares of the stock by him held in trust, as aforesaid, also 45,000 shares of stock to a Mr. Rust, and that 15,000 shares of stock should be delivered to Alexander Wilson, or whoever should advance the £3,500 on a final settlement to be made, "not later than three months," of the amount due to the appellees on account of the purchase price of the mines. The total amount due to the appellees on account of the sale of said mining claims was not paid, and on February 16, 1889, the appellees filed a bill against the Slide & Spur Gold Mines, Limited, in the circuit court of the United States for the district of Colorado, claiming a vendor's lien for the unpaid purchase money, and seeking an enforcement of the same. A decree was rendered in favor of the complainants in that case, establishing a vendor's lien on June 17, 1890. Seymour v. Slide & Spur Gold Mines, 42 Fed. 633. From that decree the defendant corporation appealed to the supreme court of the United States, and upon such appeal the decree establishing the lien and directing a sale of the mines for its satisfaction and payment was affirmed on May 14, 1894. Slide & Spur Gold Mines v. Seymour, 153 U. S. 509, 14 Sup. Ct. 842. Afterwards, on July 13, 1894, the present bill was filed by the appellants against the appellees to restrain the sale that was about to take place under the aforesaid decree. The bill of complaint so filed by the appellants recited, in substance, the various facts and transactions heretofore stated, and as a ground for the relief sought charged, in substance, that prior to the making of the aforesaid agreements of August 18, 1887, and August 19, 1887, said J. Fenton Seymour, as the agent of the appellees, had represented to the appellants who compose the Scotch syndicate that, if they advanced the £10,000 sterling necessary to secure a conveyance of the aforesaid mining claims to the Slide & Spur Gold Mines, Limited, as contemplated by said agreement of August 18, 1887, "such conveyance of said property should and would be free and clear of all liens and in-

cumbrances of any nature or kind whatsoever, and particularly that such conveyance should and would be free and clear from any grantor's or vendor's lien of the said Ellen R. Seymour and William G. Pell, arising from or by reason of such conveyance, * * * and that seventy-five thousand shares of stock should be held for * * * said Scotch syndicate in such manner that the same should be fully paid up shares of said company, and so as to secure to * * * such Scotch syndicate the rights, powers, and interests that pertain to the holders of fully paid-up shares, and that no lien or incumbrance, and particularly no grantor's or vendor's liens, should exist or be asserted against said property by said Ellen R. Seymour and William G. Pell by reason of said conveyance of said property to said company." Similar averments were made in the bill with respect to representations said to have been made by said J. Fenton Seymour, on or about December 15, 1888, when Alexander Wilson, another of the appellants, was induced to pay to the appellees £3,500 towards completing the purchase of the mines; that is to say, it was averred, in substance, that at said time said Seymour represented that, if said Scotch syndicate should pay £3,500 sterling, and should receive 15,000 shares of stock in the Slide & Spur Gold Mines, Limited, the shares so received should be held free and clear of all liens and incumbrances, and that the mining claims aforesaid should be held by said company free and clear of all incumbrances, and particularly free and clear of any grantor's or vendor's lien that might be set up or claimed by Ellen R. Seymour and William G. Pell, and that the 15,000 shares of stock should be held in every respect as the aforesaid 75,000 shares were held, and that the holders thereof should have like rights, powers, and interests. On the strength of these averments, the appellants prayed that the appellees might be adjudged to be estopped from asserting or enforcing their claim to a vendor's lien against the property of the Slide & Spur Gold Mines, Limited, or that in lieu of such decree it might be adjudged that the appellants were entitled to a prior lien on the aforesaid mining claims for the money which they had respectively advanced and caused to be paid to the appellees on account of the sale by them made of said mining claims. The circuit court, after a full hearing of the case, dismissed the bill of complaint, and the complainants below have appealed.

Harvey Riddell (James C. Starkweather and Edward L. Dickson with him on the brief), for appellants.

Willard Teller (Harper M. Orahood and E. B. Morgan with him on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is conceded by counsel for the appellants that the decree rendered in the case of Seymour v. Slide & Spur Gold Mines, 42 Fed. 633, which decree was subsequently affirmed by the supreme court of the United States (Slide & Spur Gold Mines v. Seymour, 153 U. S. 509, 14 Sup. Ct. 842), estops the appellants from asserting in this suit or in any other proceeding that Ellen R. Seymour and William G. Pell, the appellees, are not entitled to a vendor's lien upon the property of the corporation for the unpaid portion of the purchase money which was agreed to be paid for the mining claims in controversy. This admission, so far as it extends, is in accordance with the well-established doctrine that the stockholders of a corporation are in privity with the corporation as to all corporate matters, and, in the absence of fraud, are bound by a decree against the corporation which establishes a corporate liability, and will not be permitted to assail such decree in any collateral proceeding. Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739; Sanger v. Upton, 91 U. S. 56,

58; Thomp. Corp. §§ 3392, 3393, and cases there cited. It is contended, however, that while the appellants are not entitled to challenge the conclusive effect of the decree in question, in so far as the corporation is concerned, yet, by reason of certain alleged representations made to the appellants before they became shareholders, the appellants are not precluded from asserting that the decree ought not to be enforced against the corporation, since the enforcement of the same will be prejudicial to their interests as stockholders. This is, in effect, an indirect attack upon the decree which established the vendor's lien, because a decree against the corporation which cannot be enforced is of no value. There is little difference between the statement that the decree is erroneous, and ought not to have been rendered, and the assertion that, because of representations made to the appellants some years before the suit to enforce the lien was brought, the decree ultimately rendered in that suit ought not to be enforced. The authority chiefly relied upon to sustain the aforesaid contention is Jones v. Bolles, 9 Wall. 364; but that case, in our opinion, is wide of the mark. It was a suit brought by a stockholder to restrain a person who had induced him to purchase his stock by means of the false representation that certain land theretofore conveyed by him to the company had been fully paid for, from bringing a suit against the corporation to compel the payment of a sum alleged to be due for the purchase money of the land. The stockholder did not wait in that case, as in this, until a judgment had been obtained against the company for the amount of the purchase money, and then seek to show that it ought not to be enforced, but he brought a suit against the fraudulent vendor of the stock to restrain the commencement of an action for the recovery of the purchase money of the land as soon as such suit was threatened. These appellants were advised of the commencement of the suit against the Slide & Spur Gold Mines, Limited, to enforce the vendor's lien. They appear to have been aware of all the proceedings that were taken in that case, and they failed to insist in that suit that the appellees had waived their right to a vendor's lien by virtue of the alleged representations on which they now rely to stay the enforcement of the decree. Under these circumstances, it seems obvious that the appeal to a court of chancery to prevent the execution of the decree by reason of the alleged representations comes too late. But it is unnecessary to rest our judgment upon this ground alone. The relief sought in the case at bar, as we construe the complaint, is predicated on the sole ground that prior to the making of the contract of May 18, 1887, quoted in the statement, the agents of the appellees, J. Fenton Seymour and Clarence P. Elder, represented to the appellants that the proposed conveyance of the Slide and Spur mining claims to the corporation would be free and clear of all liens, and particularly that such conveyance would be free of any grantor's or vendor's lien. This allegation, in substance, is repeated on several occasions, and clearly constitutes the gravamen of the bill. With reference to this averment, it will suffice to say that, after a careful consideration of the evidence, we have reached the conclusion that no representation was in fact made to the effect that in

case of a sale of the mining claims in question the appellees would waive or forego their right to a vendor's lien. If representations to that effect were made by J. Fenton Seymour, as alleged, and at the time stated, it is strange that some allusion to that fact was not made in some one of the several written contracts that were executed subsequent to the making of such representations. It is certainly remarkable that a stipulation embodying the alleged representation was not incorporated into the final contract between John Haldeman and the Slide & Spur Gold Mines, Limited, which was executed on September 10, 1887. It is further remarkable that proof of such representations was not tendered in the suit against the corporation to establish the lien, if it was deemed competent testimony to control the construction of the written agreements. We think that it is altogether the more reasonable view, that nothing whatever was said at any of the interviews preceding the actual conveyance of the mining claims to the corporation, concerning a waiver of the vendor's lien, because the legal adviser of the Scotch syndicate did not suppose that a vendor's lien could arise, or be thereafter enforced, provided the deal was carried out on the lines proposed in the contract of August 18, 1887. That was the view which was advocated with great confidence in the case of Slide & Spur Gold Mines v. Seymour, 153 U. S. 509, 14 Sup. Ct. 842. No attempt was made in that case to control the construction of the various written agreements between the parties, which were apparently complete in themselves, by proof of antecedent oral representations that had been made by the agents of the appellees. The view thus contended for was overruled. The court held, after a review of the various transactions, and after an analysis of all the written contracts, that the appellees had not waived their lien, and that the words, "free from all charges and incumbrances," which are found in the contract of August 18, 1887, had reference to prior charges and incumbrances existing against the mining claims, and did not exclude a lien which arose out of the conveyance itself. Slide & Spur Gold Mines v. Seymour, 153 U. S. 509, 519, 14 Sup. Ct. 842. It results from these views that the decree of the circuit court dismissing the bill of complaint was right, and it is hereby affirmed.