HENDRICKSON v. BRADLEY.

(Circuit Court of Appeals, Eighth Circuit. January 3, 1898.)

No. 999.

1. EQUITY PRACTICE—TIME FOR FILING REPLICATION.
    Under general equity rules 61 and 66, after an answer is filed on any rule day, complainant has 'until the next rule day to file exceptions thereto for insufficiency, and, if he files no exceptions, until the next succeeding rule day to file a general replication.

2. EQUITY JURISDICTION—SUIT TO VACATE JUDGMENT AT LAW.
    When a motion for a new trial of an action at law has been made and denied under a statute authorizing it, and the judgment has been affirmed on appeal, and thereafter the defendant has petitioned for a rehearing, under a statute especially providing therefor, which petition is denied, a court of equity will not entertain a bill to set the judgment aside on the same grounds alleged in the motion for new trial and petition for rehearing.

3. JUDGMENT AGAINST CORPORATION—CONCLUSIVENESS AS TO STOCKHOLDERS.
    A judgment against a corporation is conclusive upon the stockholders, so that they cannot maintain a suit in equity to set it aside, after the corporation has made every defense against the judgment.

4. SAME.
    A stockholder cannot maintain a bill to set aside a judgment obtained against the corporation upon allegations which show that the corporation itself has only declined to bring such a bill on the advice of competent attorneys that the proceeding could not be successful.

Appeal from the Circuit Court of the United States for the District of Wyoming.

Charles J. Greene and Ralph W. Breckenridge (Asa Bird Gardiner, on brief), for appellant.

John W. Lacey, for appellee.

Before SANBORN, Circuit Judge, and PHILIPS, District Judge.

PHILIPS, District Judge. This is a bill in equity, brought in the United States circuit court to set aside a judgment obtained by appellee in the state court of Natrona county, Wyo., against the Syndicate Improvement Company, a corporation created under the laws of said state. The answer to the bill was filed on the April rule day of court, to wit, April 5, 1897. No exceptions to this answer were filed at the following May rule day. The regular term of court convened on the 10th day of May, 1897, at which time the complainant (appellant here), assuming that he was in default for not having filed his replication on the May rule day, asked leave of court to file the replication, accompanying the application with affidavits tending to show that complainant's counsel had not been advised in time of the filing of the answer, and that no delay in the cause would be occasioned by reason

of the failure to file the replication on the first Monday in May. This application was refused by the court, and thereupon the court, after reciting the application, made the following order:

"* * * And the court, having heard said motion, and being sufficiently advised, does now deny the same; and the defendant now, under equity rule 66, moves the court that an order be granted dismissing this suit; and the court, having considered said motion and the bill and answer in this cause, does now grant the same. It is therefore considered, ordered, and adjudged by the court that this suit be, and the same is, now dismissed."

This action of the court was erroneous. The rule of practice is laid down in Daniell, Ch. Pl. & Prac. p. 765, as follows:

"After the filing of a defendant's answer, the plaintiff has six weeks within which he may file exceptions thereto for insufficiency; and, if he does not file these within six weeks, such answer, on the expiration of the six weeks, will be deemed sufficient."

On page 833, this author says:

"Replication must be filed within the time following: Within four weeks after the answer, or the last of the answers required to be put in by a defendant, is held or deemed to be sufficient."

The supreme court, however, has regulated this whole matter of practice in equity.

Rule 61 declares that: "After an answer is filed on any rule day, the plaintiff shall be allowed until the next succeeding rule day to file in the clerk's office exceptions thereto for insufficiency, and no longer, unless a longer time shall be allowed for the purpose, upon cause shown to the court or a judge thereof; and if no exception shall be filed thereto within that period, the answer shall be deemed and taken to be sufficient."

Rule 66: "Whenever the answer of the defendant shall not be excepted to, or shall be adjudged or deemed sufficient, the plaintiff shall file the general replication thereto on or before the next succeeding rule day thereafter; and in all cases where the general replication is filed, the cause shall be deemed, to all intents and purposes, at issue, without any rejoinder or other pleading on either side. If the plaintiff shall omit or refuse to file such replication within the prescribed period, the defendant shall be entitled to an order, as of course, for a dismissal of the suit; and the suit shall thereupon stand dismissed, unless the court, or a judge thereof, shall, upon motion, for cause shown, allow a replication to be filed nunc pro tunc, the plaintiff submitting to speed the cause, and to such other terms as may be directed."

—From which it is manifest that the complainant had until the May rule day to determine whether or not he would file exceptions to the answer. Failing to take exceptions, the answer stood admittedly sufficient. He then, however, had until "the next succeeding rule day thereafter," which would have been the first Monday in June, in which to file his replication. Counsel for appellee, at the hearing, sought to avoid this manifest effect of the rule with the suggestion that "consensus facit legem, communis error facit jus." But we do not think this maxim is applicable to this instance. The rule in question is a rule of right which it was the duty of the court to recognize and apply, notwithstanding both counsel may have misapprehended its meaning. This is especially so in view of the manifest purpose of this rule, which is intended to expedite the trial of the cause. So, it is the customary course of procedure in equity cases that, where a short delay in filing the replication does not have the effect to retard the taking of testimony and the bringing on the hearing, the filing

of the replication out of time is and should be generally indulged. This cause, even had the replication been filed on the first Monday in May, would not have stood ready for trial on the 10th day of May, or even at that term; as the taking of testimony had not been completed, and in due course of proceeding the cause would not have come on for final hearing perhaps until the fall term of 1897.

Notwithstanding, however, this error of the court, this cause should not be remanded, with directions to the court to permit the filing of a replication as of the date when the application therefor was made, and for further proceeding on the merits of the case, if from the record before this court it is manifest that the complainant is not entitled to the relief sought by the bill. With this in view, counsel for both parties, as if by common consent, have fully argued the law on all the undisputed facts presented by this record. So that if, in the opinion of the court, the complainant must ultimately fail, it will avoid labor and costs to the parties for this court now and here to pass upon the questions of fact and law involved. To fully comprehend these questions, a somewhat detailed statement of the history of this case, as disclosed by the bill and affidavits, and exhibits presented therewith, is rendered necessary.

The Syndicate Improvement Company, a corporation, created under the laws of the state of Wyoming, was organized in 1891. On the 24th day of November, 1893, the appellee, Bradley, instituted an action in assumpsit in the state court in said Natrona county, to recover of said company claims for services alleged to have been rendered the company as its employé, counting in one count on contract, and in another on a quantum meruit. The company defended, on the principal grounds that whatever contract or arrangement the plaintiff had was made with one Weir, who, although president of this company, was largely interested as a principal shareholder therein, and in various other like, but independent, enterprises in that state and elsewhere; and that said Weir employed said Bradley as his personal agent, the better to protect his (Weir's) interest in the Syndicate Company, and to advance his other enterprises. The answer alleged that Weir had paid Bradley for his services in full, and that the company had no contract with Bradley, and was not indebted to him in any sum whatever. In May, 1894, when this cause came on for trial, the defendant company made application for, and obtained, a continuance, principally on account of the absence of said Weir, a material witness, who, it is claimed, had said contract and evidence of said settlements, and also on account of the absence of one Green, who held certain receipts. When the next term of court came on, the defendant company moved for a change of venue against the judge of the court, and it seems to have been understood that the presiding judge would transfer the cause for hearing before another judge. But no order to that effect seems to have been entered of record. The company's counsel, it may be conceded, understood and acted on the assumption that said other judge would try the case. Between that and the succeeding term of court, coming on in the spring of 1895, the presiding judge of the district court of Natrona county died, and his successor was thereupon appointed and qualified. When the term thereafter came

on, in the spring of 1895, this newly-appointed judge assumed jurisdiction of the case. At that term, when the cause came on for hearing, the principal counsel for the Syndicate Company was absent, engaged in another court, under the impression that said cause was to be tried by the judge of another district, to whom he understood it had been transferred, as aforesaid. The junior counsel for the company was notified on the day the cause was reached on the docket that it would be tried by the then presiding judge of the district court, and he appeared only to object to the trial proceeding, on the ground of the understanding aforesaid and the absence of said principal counsel. The cause, nevertheless, then went to trial on motion of plaintiff's counsel, and without participation therein on the part of the defendant's counsel. Judgment was rendered therein for plaintiff May 18, 1895, for $4,125.29. Thereupon the defendant duly presented its motion for a new trial, assigning as a ground therefor the action of the court in trying the case against the protest of defendant, and in violation of the alleged understanding between the defendant's counsel and plaintiff's counsel and the judge of the other district. who was supposed to have undertaken the hearing of the cause. This being overruled, defendant sued out thereon a writ of error to the supreme court of the state; and on the 8th day of January, 1896, the supreme court affirmed said judgment. 43 Pac. 79.

It is conceded on the hearing in this court by both parties that on April 20, 1896, the said Syndicate Company, pursuant to the provisions of the Code of Practice of the state, filed a petition in said district court for a new trial, the purpose of which was to open up the litigation for a rehearing on the merits. This application assigned as the principal grounds therefor—First. That since the rendition of the judgment and adjournment of the May term, 1895, of said court, the company had discovered new, material, and important evidence; that, during the pendency of the cause in said court, it was unable to prove that, during a certain period of the time for which Bradley claimed and recovered for said services, there was an oral agreement between him and said Weir concerning said Bradley's employment; and that on the 29th of November, 1892, Weir and Bradley had a settlement therefor, which was evidenced by receipts executed by Bradley to Weir, in full, which said receipts had since been discovered, and were at the time of this petition for a new trial in the possession of the petitioner; and, further, that a written contract existed between said Weir and Bradley, dated November 29, 1892, concerning the employment of Bradley by Weir after said 29th day of November, 1892, which contract, since the term of court at which the judgment was rendered, had been discovered, and is now in the possession of the petitioner; and that said Bradley, when he obtained said judgment, had been paid for said services in full under said written contract. And, second, that the Syndicate Company could now produce said written receipts and agreement, and show that said Bradley was not during any of the time which he claimed in the said suit in the employ of the Syndicate Company, but was in the employ of the said Weir individually. This petition was supported by affidavits and testimony reciting the facts aforesaid, and showing that during the time of the pendency

of said suit in the state court, and up to and after the time of the rendition of said judgment, the said Weir was absent in Old Mexico, appearing occasionally in the city of New York, and his testimony could not have been obtained by defendant, although it made very diligent effort to secure the same.

On the hearing of this petition, on May 21, 1896, the court entered the following judgment:

"The above cause coming on now for trial on the pleadings and evidence of the parties and arguments of counsel, and the court, being now fully advised in the premises, doth find generally for the defendant, to which finding plaintiff now and here excepts. It is therefore ordered, adjudged, and decreed that said defendant go hence without day, and that he have judgment for his costs in this behalf expended," etc.

On said writ of error from the first judgment, the plaintiff in error gave a supersedeas bond. Since the proceedings aforesaid, and before the institution of the present suit, Bradley instituted an action in said district court of Natrona county on said bond against said company and sureties therein, to recover the amount of said judgment, and has obtained judgment thereon, from which another writ of error has been sued out to, and is now pending in, the supreme court of the state.

In this condition of the controversy, the complainant herein, as a nonresident stockholder in said Syndicate Company, has instituted the suit under review to annual the judgment in question. The bill is lodged against the Syndicate Company, and said Bradley, and James D. Negus, Charles J. Barnes, and Charles L. Easton, as trustees or board of directors of said company. Negus is a citizen of Wyoming, while Barnes and Easton are citizens of the state of Illinois. None of the defendants, save Bradley, appeared to this action. The bill sets out, with detail, the history of the litigation leading up to the judgment in favor of Bradley against the company. It charges that Bradley was never employed by said company, but was employed by said Weir in his individual capacity, and that the company never owed Bradley one cent. It recites the charges aforesaid respecting the general and special contracts of Bradley with Weir, and the giving of said receipts, and charges that said Bradley waited until he knew that Weir had left the country, and could not be found, before bringing said action against the company; that he knew his claim against the company was false and fraudulent, and designed to press it to judgment on false and perjured testimony in the absence of Weir, knowing the inability of the defendant company to obtain the testimony of said Weir and said evidence. The bill charges said Bradley with bad faith in pressing the case in the state court to trial, against the understanding of defendant's counsel that the cause was to be tried before another judge at another time, and that he supported, on the trial of said cause, said claim with his own testimony, which he knew to be false, and that the Syndicate Company was prevented from participating in said trial by reason of its counsel being misled as to the judge who would try the case, and as to the time of such trial. The bill, to justify the bringing of this suit by complainant, after alleging that he was during all the times aforesaid a large stockholder in said Syndicate Company, and a citizen

of and residing in the state of New York, avers that he was unaware of the said proceedings in the state court, and was unfamiliar with the affairs of the said company in the state of Wyoming, as he never held any office therein. It then sets out the correspondence had between him and the Syndicate Company, which induced him to bring this suit. In his first letter to the president and trustees of the Syndicate Company, he stated that he had just learned of the said litigation with Bradley, and that he was informed that the board of trustees had decided to pay the judgment; that in view of the fact, as he understood it, "that the company holds receipts in full for all moneys that may have been due Chester B. Bradley, and that there has been no opportunity on the part of the company to be heard upon the merits of the case, I hereby respectfully request that a suit be instituted at once, either by bill in chancery or by some other appropriate proceeding in the courts, to have said judgment annulled. I also request that a meeting of the shareholders of the company be convened to take such action as shall be deemed best." On the 23d day of November, 1896, James D. Negus, as secretary of the company, replied, informing the complainant that the trustees had referred his communication to Charles J. Barnes, one of the largest stockholders and a trustee of the company, to procure the opinion of Wyoming lawyers as to whether the company could set aside the Bradley judgment by a suit in equity. "As the company has failed to obtain a new trial, and also has failed to have the judgment vacated, the trustees beg to state that they agree with you that the judgment has been unjust, and that the receipts which the company now hold show that Mr. Bradley has been paid in full." This letter further advised the complainant that the president of the company had called a meeting of the shareholders for the 30th of November, 1896, in the city of New York, and requested the complainant to be present and present his desires to the shareholders. On the 30th of November, 1896, said meeting was held in the city of New York, at which complainant appeared; and, after discussion of the matter, "the shareholders decided to take no action until the 14th day of December, 1896, to which date the meeting adjourned." The bill then proceeds to allege that shortly after the 23d of November, 1896, said Barnes visited Cheyenne, and "obtained the opinion of Wyoming lawyers, which opinion held that the Syndicate Company could make no further defense to the payment of said judgment." And on the 5th day of December, 1896, the said Negus, secretary of the company, sent the complainant the following letter:

"Referring to my communication of November 23, 1896, I beg to say that Charles J. Barnes has been to Wyoming, and consulted counsel in regard to the Bradley matter, and they advised the payment of the judgment; and hence the trustees of the company have decided to pay off said judgment within the next thirty days. The trustees have declined to bring any suit such as you have requested, or to take any further action in reference to the matter."

The bill, in this connection, further states that the shareholders held the adjourned meeting in New York, December 14, 1896, at which meeting the said shareholders declined to instruct the trustees of the company to bring a suit in chancery, or take other legal proceedings in reference to the Bradley suit. The bill makes the necessary allega-

tion that this suit is not collusive for the purpose of conferring jurisdiction of this case upon the United States court, and is brought in good faith, to prevent the collection of said judgment, and to restrain the officers of the company from using the moneys of the company therefor.

We may most fitly apply to this case the language of Mr. Justice Miller in U. S. v. Throckmorton, 98 U. S. 61:

"There are no maxims of the law more firmly established or of more value in the administration of justice than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy; namely, 'Interest reipublicae ut sit finis litium,' and 'Nemo debet bis vexari pro una et eadem causa.' "

It appears from the recitals of the bill that the Syndicate Company had exhausted every available remedy under the laws of the state of Wyoming to defeat Bradley's claim, and to prevent what it conceived to be an unjust demand. Undoubtedly, it had its day in court,—a court of competent jurisdiction over the subject-matter and of the parties. The company could not again be heard to complain of the action of the district court of Natrona county in putting the case on trial at the May term, 1895. If that was error, it was reviewable, first, by the trial court on motion for new trial. Such motion was duly presented and overruled. If that was error, the company had its remedy by prosecuting a writ of error to the supreme court of the state. That was done, and the judgment was affirmed.

No importance is attachable to the assertion in the bill that the supreme court did not consider the question of defendant's counsel therein being misled by the understanding that the cause was to be tried to some other judge, for the reason that the evidence touching that matter was not preserved in the bill of exceptions. If there was failure in this respect, it cannot be alleged to Bradley's prejudice. The company did present this question in the motion for new trial, and had opportunity thereon to present evidence, and preserve it in a bill of exceptions; and, if it failed to do so, it was its neglect, and it is without excuse in law. But, more than this, under the Revised Statutes of Wyoming the most plenary and liberal provisions are made for saving to the defeated party, after final judgment, every opportunity to have heard, considered, and determined by the trial court every available question presented for review and relief in this bill. Section 2652 declares, in substance, that a new trial is a re-examination in the same court of an issue of fact after a verdict of a jury or decision by the court; that a new trial may be granted on the application of the party aggrieved for various causes, among which are any irregularity in the proceedings of the court or jury, or abuse of discretion by which the party was prevented from having a fair trial, misconduct of the jury or of the prevailing party, accident or surprise which ordinary prudence could not have guarded against, newly-discovered evidence material for the party applying, which he could not with reasonable diligence have discovered and produced at the trial. Section 2656 provides that when the grounds for a new trial could not, with reasonable diligence, have been discovered before, but are discovered after, the term at which the verdict or decision was rendered or made, the application may be made

by petition, filed, as in other cases, not later than the second term after the discovery. It then provides for summons and for a summary hearing at the ensuing term, either upon the examination of witnesses or depositions taken, as in other cases. Section 2701 authorizes a district court to vacate a judgment and grant a new trial for mistake or neglect of the clerk or irregularity in obtaining a judgment, for fraud practiced by the successful party in obtaining the judgment, as also for unavoidable casualty or misfortune preventing the party from prosecuting or defending; and it expressly authorizes the vacating of a judgment and granting a new trial when such judgment was obtained, in whole or in a material part, by false testimony on the part of the successful party or any witnesses on his behalf, which ordinary prudence could not have anticipated or guarded against, and the guilty party has been convicted.

It is conceded that the company did avail itself of this statute in due time. Newly-discovered evidence, fraud, and misconduct on the part of Bradley in obtaining said judgment, accident, surprise, unavoidable casualty, or misfortune preventing the defendant from defending, were each and all of them grounds of relief under such petition. The company did present as grounds of relief in said petition that the claim of Bradley was false, as hereinbefore recited, the discovery of evidence as to the nature of the contract between him and Weir, and the payment to him thereon. There is no pretense, in view of the affidavits and depositions presented on that hearing, that all the material facts relied on in this bill were not then known to the company. In fact, the materiality of the testimony of Weir and the existence of the alleged special contract and the receipts were, in effect, disclosed on affidavits made and filed in connection with the application for new trial pending the suit of Bradley against the company. Having again had its day in court, the defendant company was certainly concluded by the judgment on this petition to vacate the judgment, and for a new trial.

Mr. Justice Miller, in Nougue v. Clapp, 101 U. S. 553, speaking of a kindred question, said:

"The laws of Louisiana provide a remedy, by a special proceeding, to have a declaration of nullity of judgment in such cases as this in the court where the decree is entered. There is no allegation that the plaintiff pursued any of these remedies."

—Whereas in the case at bar it affirmatively appears that the company, defendant in that suit, did avail itself of the provisions of the Wyoming statute. Mr. Justice Miller, in exemplification of the rule announced above, quotes from the case of Randall v. Howard, 2 Black, 585, speaking of an attempt to review by bill in equity the action of the state court, the following:

"This is a direct and positive interference with the original authority of the state court. If there was error in the proceedings of the court, a review can be had in the appellate tribunals of the state. If, as is charged, the decree is sought to be perverted and made the medium of consummating a wrong, then the court, on petition or supplemental bill, can prevent it."

It has been expressly held by this court in Folsom v. Ballard, 36 U. S. App. 75, 16 C. C. A. 593, and 70 Fed. 12, that when a motion

for a new trial of an action at law has been made in the trial court, under a statute authorizing it, and has been heard on the merits, and denied, equity will not entertain a bill for a new trial of the action based on the same grounds.

It is manifest, therefore, that, had the company itself brought this bill, it would be concluded by the judgment of the district court rendered on said petition. It is a familiar rule of estoppel of record that a judgment between the same parties on the merits constitutes an absolute bar to a subsequent suit on the same cause of action. "It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." The existence of the witness Weir and the facts sought to be established by him, as also the special contract between him and Bradley alleged in the bill, as also the receipts, were unquestionably known to the company at the time of the hearing of the petition for rehearing, as also the alleged fact that Bradley supported his claim by false testimony. If it did not then present for the consideration of the court all of the facts known to it, or "any other admissible matter (known to it) which might have been offered," it would equally be precluded from insisting upon them now, were it complaining here. A stockholder of the company is equally bound and concluded, for the reason that he is an integral part of the corporation, as, in contemplation of law, "he was before the court in all the proceedings touching the body of which he was a member." Sanger v. Upton, 91 U. S. 56; Wilson v. Seymour, 40 U. S. App. 567, 22 C. C. A. 477, and 76 Fed. 678. As aptly said by Jackson, J., in Stutz v. Handley, 41 Fed. 537:

"It cannot be relitigated in this case, for the reason that the defendants, as shareholders, being represented by the corporation in that suit, have already had their day in court on this question."

We therefore quite agree with the opinion given by "Wyoming lawyers" to the principal stockholder (adopted by complainant in his bill, as by it he justifies the necessity of independent action by himself), that the company could no longer defend against the judgment. We, then, have presented the bald proposition of a suit in equity instituted by a single nonresident stockholder in a United States court, asking it to annul for fraud the solemn judgment of the state court rendered against the corporation, not only without alleging any collusion between the judgment creditor and the directors of the corporation, or any deception practiced by the creditor upon the court or the adverse party in obtaining the judgment, or alleging any neglect of duty on the part of the directors, but, on the contrary, in the face of the admitted fact that the trustees have done everything in their power to resist the judgment, by exhausting all the ample resources of the Code of the state in such resistance,—even more, after the trustees have so far sought to nullify the judgment as to estop them from further contention. While the complainant has joined the corporation and the trustees as co-defendants in the bill, this is but a mimic show. The complainant has utterly failed to bring himself

within the rules laid down by the supreme court in Hawes v. Oakland, 104 U. S. 450.

The allegation that Bradley supported his claim in the state court by false swearing is not of itself sufficient to invoke the equitable interposition of the court; for, if the courts of equity were to assume jurisdiction to vacate judgments at law because of false swearing at the trial, they would, in effect, become courts of review of a large per cent. of the litigation in trial courts. Woodworth v. Van Buskerk, 1 Johns. Ch. 432; Cotzhausen v. Kerting, 29 Fed. 821; Hass v. Billings, 42 Minn. 63, 43 N. W. 797; Ward v. Town of Southfield, 102 N. Y. 287, 6 N. E. 660.

Without questioning the sincerity of the feeling of outrage expressed over the conceived injustice of the appellee's claim, yet, reduced to its last analysis, this bill, in effect, is a request that a federal court shall grant a new trial on a judgment rendered by a state court after the state court has refused two applications for such rehearing. A federal court is neither invested with nor exercises such jurisdiction. The action of the United States circuit court in dismissing the bill was right, although it assigned a wrong reason therefor. The judgment is therefore affirmed.