## COTZHAUSEN *v.* KERTING.

*(Circuit Court, E. D. Wisconsin.* December 26, 1886.)

EQUITY—RELIEF AGAINST JUDGMENT AT LAW—PERJURY—CONSPIRACY AND SURPRISE.

   It is not sufficient ground for relief in equity against a judgment at law that the verdict was obtained by perjury; and the addition, in a bill praying such relief, of allegations of conspiracy and surprise, does not make a case for interference in equity, with the enforcement of the judgment.

Bill in Equity to obtain relief against judgment at law. On demurrer to bill.

*H. C. Sloan,* for complainant.

*G. W. Hazelton,* for defendant.

DYER, J. The defendant in this bill recovered a judgment against the complainant in the circuit court of the United States for the Northern district of Illinois in an action of trespass. The suit in which the judgment was rendered grew out of the foreclosure by the complainant, Cotzhausen, of certain chattel mortgages which he held upon property in the possession of the defendant; and the complainant was adjudged a trespasser in enforcing a foreclosure as to certain articles of property which it was claimed by the plaintiff in that suit were not covered by the mortgages. Suit at law being brought upon the judgment in this court, the complainant files the present bill, on the equity side of the court, to enjoin the prosecution of the action, on the ground that the

judgment was obtained by fraud. The bill is demurred to for want of equity, and the question is, does the bill present a case entitling the complainant to the relief prayed for? I am of the opinion that it does not, and a brief reference to the averments of the bill will, I think, make it quite apparent that no other conclusion can be reached, consistently with principles of equity practice.

The bill begins by alleging that the judgment referred to was procured by fraud and perjury on the part of Kerting, "and certain other parties conspiring and combining with him for that purpose." A general allegation of fraud, such as this, is insufficient. As a matter of pleading, it is indispensable that the fraud, and the acts of the parties which it is claimed constitute the fraud, be specifically and distinctly pointed out, that the court may see whether grounds for the relief invoked, exist or not. However, the demurrer being a general one, on the ground of want of equity, the question is not whether particular allegations are in and of themselves sufficient, but whether, upon the whole bill, a case is made for relief in equity. In recognition of the principle in equity pleading just stated, the bill proceeds to state the particulars of the alleged fraud as follows:

"And in 'that behalf your orator avers and alleges that, on or about the twenty-fifth day of September, A. D. 1880, at the city of Chicago, he caused to be foreclosed two certain chattel mortgages given by the American Oleograph Company, covering a large stock of mortgaged chattels, several thousand in number, used and employed in carrying on a lithographing and engraving business, under the name of the Chicago Lithographing Company; that, for a long time theretofore, said Kerting had been in the possession, control, and management of said business and property, using and operating the same as if they were his own; that on the foreclosure it was ascertained that a number of the mortgaged chattels were removed from the premises, and missing, among which were lithographing stones and other articles of great value; that on the sale there remained a deficiency of $5,147.58, which still remains unpaid; that, when ousted by said sale, strenuous efforts were made by said Frank Kerting, extending over a number of years, in a variety of legal proceedings instituted against your orator, his law partner, and his local attorney and agent, who conducted said foreclosure sale, to set aside and invalidate the same, and thus to recover possession of said business and property, but that all of said proceedings proved fruitless and unavailable; that, having failed in his efforts in this direction, said Frank Kerting filed, in February, 1884, his *praecipe* for a summons in the superior court of Cook county, State of Illinois, against your orator, who had become the purchaser of the mortgaged property at the foreclosure sale, and in said suit thus instituted, being the same referred to in the original cause herein, he charged in his complaint, trespass *vi et armis*, your orator with having unlawfully taken and carried away, on the twenty-fifth day of September, 1880, a large amount of personal property said to belong to him individually, among which were some forty or fifty lithographing stones, and color-grinder, and varnish-machine, and paper-cutter, and desk, counter, and chairs, a lot of electrotypes, pictures, chromos, some work in process of being finished, and other small chattels."

Thus far nothing is stated except introductory matter, showing the origin and character of the controversy between the parties. The bill then proceeds further to allege—

"That said suit was subsequently removed to the United States circuit court for the Northern district of Illinois, and, being at issue in said court, and coming on to be tried before a jury, in that behalf duly taken and sworn between the parties, and upon the trial of said issue, the said Frank Kerting did then appear and tender himself, and was received to give evidence on behalf of himself, and did then take his corporal oath, and was duly sworn; and then, and upon the trial of said issue, it became and was a material question in the same whether, after the foreclosure sale, the said Kerting made a demand upon this defendant for any of the property which he thus individually claimed outside of the mortgaged chattels, and whether he fairly disclosed to your orator his claim of title thereto; and thereupon the said Kerting, having been so sworn as aforesaid, devising and wickedly intending to cause and procure a verdict to pass for him, did then and there falsely, willfully, and corruptly depose, and give evidence in substance and to the effect, that he made demand for said property because not embraced in said mortgages, and was refused possession thereof; and whereas, in truth and in fact, he never made any such demand, or in any other manner laid claims to any of the property above referred to, nor ever disclosed his right to any portion thereof, except by contesting and impeaching the foreclosure sale generally."

If the question whether the plaintiff in the Illinois suit claimed and demanded the property in question before suit brought, was a material one on the trial of the case, then it simply constituted one of the facts in issue concerning which the parties could themselves testify, and upon which they could adduce such other evidence as they may have had at hand bearing upon it. The whole gist of the allegation is that Kerting swore falsely that he made a demand for the property. That is all there is of it. In other words, it would seem that he testified on the trial that he made a demand. It is alleged that in so testifying he committed perjury. It must be assumed that the complainant, if the question was a material one, met it with testimony on his part. At least, it was his duty to do so, just as it was to meet any other issuable fact in the case. It was then the ordinary case, so far as the bill shows, of a contest between parties upon an issue of fact, on a trial before court and jury, where presumptively both parties had an equal footing, and each had an equal opportunity to present his side of the case, and where the jury, after considering the evidence, accepted the claim of one party rather than that of the other. To this point, that is all there is of the case made by the bill. It is not a sufficient ground for relief in equity against a judgment at law that one of the parties, or that some witness, or many witnesses, testified falsely upon a material question of fact in issue. If, upon such grounds, a court of chancery were to reopen issues settled by verdict of a jury, and thus relieve suitors from judgments recovered at law, it is difficult to see where litigation would stop, and what stability there would be in the adjudications of courts of law. Moreover, if the complainant were able to show, as he would have to do if this bill were maintained, that perjured testimony was given on the trial of the suit at law, and that such testimony caused a verdict against him, then his form of relief was in a motion for a new trial, addressed to the trial court. It was matter that came directly within the province of that court; for, according to the allegations of the present bill, the question involved was

one of fact, material to the issue. It was therefore legitimately and strictly the subject of review on motion for a new trial.

But the bill in its stating part further proceeds as follows:

"Furthermore, then and there, upon the trial of said issue, your orator, among other things, claimed title in himself under and by virtue of a sheriff's sale on judgment and execution, in the case of *The Butler Paper Company* v. *Frank Kerting and the Chicago Lithographing Company*, all of which duly appeared from the records and files of the court wherein said judgment was rendered; and it became and was, under the rulings of the presiding judge, a material question on said issue and trial whether this execution levy prior to the sale was abandoned by the judgment creditor, and whether said sale thus regularly appearing of record was fictitious or *bona fide*, and consequently whether the title of said Kerting, if any he ever had, to the property above referred to had become extinguished by such sale; and thereupon the said Kerting, devising and wickedly intending to cause and procure a verdict to pass for him, did then and there, by his own corporal oath, and that of the president of the judgment creditor, conspiring and conniving with him for that purpose, falsely, willfully, and corruptly depose and give evidence, and thus made it to appear in substance and effect, that said levy was withdrawn and abandoned, that no sale on execution was in fact made, and no money realized as purported by the record, and that the pretended proceedings were fictitious; whereas, in truth and in fact, the return of the sheriff as to his levy and sale was true, in every particular correct, and in conformity to the facts as they occurred and transpired at the time, so that all right, title, and interest of said Frank Kerting, if any interest he ever had, were fully extinguished by such sale, and acquired by your orator."

What has been stated of preceding allegations of the bill applies with equal force to this. If it was a material question on the trial of the suit at law whether the execution levy referred to, which was one of the sources of complainant's title, was abandoned by the Butler Paper Company, and whether the sale thereunder was fictitious or *bona fide*, then the complainant was compelled to meet that question with testimony, as an issue of fact in the case. The plaintiff in the suit at law, it seems, attacked the sale. It therefore devolved upon the defendant in the case to defend and maintain the sale. If his evidence was insufficient, or was overborne by testimony against him, that is not ground for relief in equity. The issue was one involving title. Both parties had to meet it; and. as already stated, even if false testimony was adduced on one side in maintaining the issue, that does not give the complainant a footing in equity to avoid the verdict and judgment. Again, this was a matter reviewable by the trial court. If it were shown that injustice had been done to one side by false swearing on the part of the other, or that the defeated party had been surprised, and therefore had not been able to meet such false testimony, it was within the power of the court to set aside the verdict, and grant a new trial.

The bill further proceeds:

"And your orator further shows that at the time of foreclosure of said chattel mortgage, and for several months thereafter, your orator had no possession or control, direct or indirect, actual or constructive, over the greater portion of the goods and chattels said to have been taken and carried away by your orator; that the color-grinder, varnish-machine, paper-cutter and labels, and

the work in process of execution, were then held as claimed by third parties, strangers to your orator, in manner following, to-wit: The color-grinder, varnish-machine, and two bundles of labels, containing about twenty-five hundred sheets, had been seized and taken, and were then held under a writ of attachment against said Frank Kerting at the suit of one Otto Waltersdorf, and were afterwards, to-wit, on the twenty-first of October, 1880, sold on execution to satisfy the claim of said Waltersdorf, amounting to $165, more or less, and purchased from him, said Waltersdorf, under date of October 22, 1880, for the sum of $137.43, then to him in hand paid; that the paper-cutter was held by Goodwillie, Wyman & Co., who had repossessed themselves of the same because Kerting did not comply with the terms of a conditional sale under which he had acquired possession, and had paid but an insignificant amount on account of the purchase money thereof; that said paper-cutter did not come under the control of your orator until on or about October 30, 1880, when he bought the same from the above firm in consideration of $200, to them in hand paid; that the work in process of execution was assigned by said Frank Kerting himself, on or about September 20, 1880, to one of the press hands, for the purpose of having the same finished, and the net proceeds thereof applied to the payment of wages then due to the employes of the shop; that the electrotypes and wood-cuts referred to as having been taken and carried away never came to the hands or knowledge of your orator until several years thereafter, when a box containing the same was found by employes of the shop, stored away on the top of a stone-rack, upon discovery whereof the same were at once tendered to said Kerting, who, however, refused to receive the same; that no chromos, views, or anything of the kind, have come to the possession of your orator, unless it be intermixed with mortgaged goods of the same kind and character, and that no use of any such stuff was ever made by your orator, because utterly worthless, and of no commercial value; that all of these facts, matters, and things were well known to said Frank Kerting, but that then and there, upon said trial, and when all of the above matters were material to the issue, the said Kerting, devising and wickedly intending to cause and procure a verdict to pass for him, did make it falsely and fraudulently appear, by his oath and testimony, and the testimony of said Otto Waltersdorf, then conspiring and conniving with him for that purpose, that the execution sale of the color-grinder, varnish-machine, and labels, in the case of *Waltersdorf* v. *Kerting*, was fraudulent and void, for the reason that the judgment debt was collected and paid between the time of the levy and the execution sale; that the said Frank Kerting had absolute title to the paper-cutter, and that the sale of the same had not been conditional as claimed and asserted on the defense; that he, said Kerting, had not disposed of any of the goods, chattels, and things said to have been thus wrongfully taken, carried away, and converted by your orator, and that said property was of large value; whereas, in truth and in fact, the judgment of said Waltersdorf had not been paid, the paper-cutter was conditionally bought, and only twenty or twenty-five per cent. paid thereon, the press-work had been assigned as aforesaid, and the whole interest of the said Kerting in and to the entire property, if any he individually owned, was but nominal, and not worth to exceed, in the aggregate, fifty dollars,—all of which said Kerting well knew as aforesaid."

It would be but repetition of what the court has held in its comments upon other allegations in the bill, to point out the reasons why these averments present no grounds for a court of equity to interfere with the suit on the judgment. The issues were all such as might legitimately arise in the Illinois suit, and those issues, as they are set out in this bill, can-

not be litigated over again here.   I repeat that the complainant's remedy for the alleged wrongs done him was in the court that tried the case. It would be most anomalous, and open the door to perpetual controversies, if a court of chancery were to put its strong hand upon judgments at law, and say that they shall not be enforced, where it can be made to appear that, in a trial at law resulting in judgment, perjury was committed by witnesses sworn in behalf of the successful party.   For such wrong the injured party is not without remedy, but his remedy is in the court that had original cognizance of the controversy.

Counsel in argument laid much stress upon certain allegations in the bill to the effect that the alleged false testimony was given in pursuance of a combination or conspiracy between Kerting and other parties, and it was insisted that, therefore, the fraud complained of was not remediable in the court where the case was tried.   I am wholly unable to see how the allegation that the alleged false testimony was given in pursuance of such a combination as is charged, adds any weight to the averments that the parties testified falsely, and that, therefore, an unjust verdict was rendered.   The wrong done, if any, consisted in the alleged false swearing upon the questions of fact in issue between the parties. The result complained of must have been brought about, not by any previous conspiracy, but by the false testimony, if any, given on the trial. A conspiracy without an overt act committed in pursuance of it, is harmless.   Upon the allegations of the bill it must be considered that the alleged injury to the complainant resulted from the false swearing or perjury.   That is the gist of the fraud which is set up in the bill.   Stripping the pleading of its verbiage, it consists of the charge that the verdict in the suit at law was obtained by false swearing on the part of Kerting, and two witnesses examined in his behalf.   It does not help the complainant's case to state, as he has done, that the alleged fraud and perjury were not anticipated by him when he entered upon the trial of the action, because that is simply stating a case of surprise, from which, if well founded, the trial court could relieve him.

It is alleged in the bill, that, under the practice of the federal court in Illinois, the issue on the trial of the case was not such that the complainant could fairly or reasonably anticipate that the plea of title in himself, acquired from third parties on execution and private sale, would or might be avoided in rebuttal by testimony of the false nature and character referred to, and that he had no reason and opportunity to anticipate or meet such false and fraudulent statements.   If the defendant in his plea in that case set up title to the property in himself, he must have known that, in an action of trespass, that title could be attacked; and, in any event, it is clear that the power of the trial court to protect the complainant against any such wrongs as are complained of in this bill was adequate, and it is not for this court to say that such power would not have been exercised upon sufficient and proper grounds shown.

To stay the suit at law, and to now go into an investigation of the matters set up in the bill, would be, in my judgment, equivalent to re-

opening the very issues tried in the case at law, on the equity side of the court, and would be equivalent to granting in equity a new trial of a suit tried at law. This cannot be tolerated.

On the whole, I am of the opinion that the bill does not state a case entitling the complainant to the relief he seeks, and therefore that the demurrer should be sustained, and the bill dismissed.