MATHEW L. CAGLE V. ALMARINDA DUNHAM, RALPH P. DUNHAM, HARRY S. DUNHAM, JAMES J. DUNHAM, SAMUEL A. DUNHAM, LAURA C. DUNHAM, KATE V. LANG, MATTIE WALTERMIRE, AND MAGGIE WASHABAN, *heirs of* PEYTON R. DUNHAM, *deceased.*

(Filed September 3, 1904.)

**DECISIONS OF LAND DEPARTMENT—Will Not be Set Aside, When.** Where due notice is given the parties to a controversy in the land department of the United States, and they appear therein with their witnesses, and are given a full and fair hearing, and submit the cause to the department for final decision, courts of equity will not intervene to set aside such decision, upon an allegation in a petition that perjury was committed by the parties or witnesses in the course of the trial of such controversy in the land department.

(Syllabus by the Court.)

*Error from the District Court of Noble County; before Bayard T. Hainer, Trial Judge.*

*Dale & Bierer,* for plaintiff in error.

*C. W. Ransom* and *S. H. Harris,* for defendants in error.

### STATEMENT OF FACTS.

This was an action by the plaintiff Cagle to have the patent conveying title to the S. W. 1-4 of section 23, township 23 north, range 1 west I. M., to Peyton R. Dunham by the government, declared to be held in trust for the use and benefit of the plaintiff, and for judgment conveying the legal title to plaintiff.

The petition sets forth the qualifications of plaintiff to acquire lands from the government under the homestead laws, and the fact of his settlement upon the lands in question as a homestead settler thereon after twelve o'clock noon of September 16, 1893, the date upon which said land was open to settlement under proclamation of the president, and the fact of his continuous occupation of and residence upon and cultivation of the same in full compliance with the provisions of the homestead law, and the further fact of his presentation to the local land office of his application to make homestead entry therefor. That Peyton R. Dunham, the patentee, was an adverse claimant to said tract of land, and as such filed a contest against the plaintiff, which came to hearing before the register and receiver in March, 1897, resulting in a decision by the local offices in favor of plaintiffs, and recommending the dismissal of said contest, from which decision the defendant (Dunham) appealed to the commissioner of the general land office, where the decision of the register and receiver was on January 1, 1901, affirmed. That thereupon Dunham appealed said cause to the secretary of the interior, who on July 15, 1901, reversed the decision of the commissioner and local office, and awarded the land to Dunham. The plaintiff afterwards and in due

time moved the department for a review of that decision awarding the land to Dunham, which application was denied by the secretary of the interior. The plaintiff afterwards filed before the department a second motion for review, which was heard in July, 1902, and again denied, and plaintiff's application to make homestead entry of said land was refused, and the land finally awarded to Dunham.

Plaintiff's petition then set forth and declares that the decision of the local land office and commissioner was a true and correct decision in said cause; and that the honorable secretary of the interior decided the plaintiff to be the first settler upon said tract and qualified as such, but that he had failed to maintain his residence thereon as required by the homestead law. The petition then states that the decision of the secretary of the interior was procured and induced by the testimony of Dunham and seven other witnesses, naming them, and that said witnesses, through the procurement of the defendant, wilfully and knowingly testified falsely touching plaintiff's residence upon the land, and in substance and effect each and all of said witnesses, including the defendant himself, with the intention of deceiving the land department of the government and of cheating and defrauding the plaintiff out of said land, testified that from September 16, 1893, to a period in 1897, the plaintiff had been upon said land only occasionally, and had not resided thereon continually as required by the homestead law, and that by reason of such testimony the honorable secretary of the interior was misled and deceived, and failed to find the truth touching plaintiff's residence upon the land; that the testimony of the defendant and all of said witnesses was false,

by reason whereof the decision of the honorable secretary
was given, and avers that if said witnesses had testified
truthfully, the honorable secretary would have decided the
case in favor of the plaintiff, and, finding a continuous resi-
dence in good faith by plaintiff upon the land between the
dates above mentioned, would have awarded the land to plain-
tiff. The petition further avers that final proof was made
by defendant, resulting in a patent issued August 22, 1902,
and delivered to the defendant Peyton R. Dunham at a
cost to him of $23.25, which amount of money is tendered
to defendant, and plaintiff brings the same into court for
that purpose.

Attached to the petition as exhibits are the several de-
cisions of the land department which show the conclusions
as stated in the petition, and show that after the first
hearing in said cause, a decision in said cause was reached
by the local office in favor of the plaintiff Cagle, holding
him qualified and that he complied with the requirements
of the homestead law, which was appealed by Dunham to
the commissioner of the general land office, and a conclu-
sion there reached reversing the local office, and awarding
the land to Dunham, because Cagle's limited residence on
the land did not comply with the requirements of the home-
stead law. This decision was in turn reversed by the in-
terior department, holding the proof sufficient in reference
to Cagle's residence on the land, and upon motion for review
the interior department preliminarily sustained the motion,
and ordered the case back to the local office, with direction
that a further hearing be had at an early day, and directed
the local office to again consider the case upon the testi-

mony first had, together with the testimony taken upon such rehearing, giving as a reason that no satisfactory conclusion could be predicated upon the record as then made. Such rehearing was had in February and March, 1900, after which, upon the request of both parties, the local officers visited the land and made personal inspection of the improvements, and on August 29, 1900, the local office rendered its decision in favor of Dunham, recommending that his entry remain intact.

From this decision Cagle appealed to the commissioner, and the commissioner in a long and exhaustive opinion reversed the decision of the local office, holding Cagle's residence on the land sufficient, and Dunham's entry subject to Cagle's prior right. From this decision Dunham appealed to the secretary of the interior, who, in turn, reversed the commissioner of the general land office, and directed that Dunham's entry be allowed to remain intact. Cagle thereupon filed a motion for a review of this decision by the secretary of the interior, who on that motion in a long and exhaustive opinion sustained his former decision, and denied the motion. The case was again brought before the interior department upon a petition of Cagle for a review of the departmental decision, which petition was denied by acting secretary Ryan, and the case closed in the land department of the government, thus finally awarding the land to Dunham.

To the petition in this case, asking that the patent for the land subsequently issued be declared a trust in favor of the plaintiff, the defendant demurred, which demurrer was by the trial court sustained, and said cause dismissed,

from which judgment the cause now comes to this court upon petition in error, asking a reversal of the judgment.

Opinion of the court by

GILLETTE, J.: It will be observed from the foregoing statement of facts, that the basic principle contended for by the plaintiff in error is that the court has jurisdiction to reverse conclusions reached by the interior department in contests for individual rights to public land under the homestead law, in an action charging that such department has reached an erroneous conclusion on account of fraud practiced by the successful party by bringing before the officers of that department testimony which is false as to the fact in issue; in short, perjury by witnesses testifying, upon which testimony the judgment of the department rests.

It has been settled by a long line of decisions that the land department of the government is supreme in determining the facts upon which and by reason of which an individual may acquire title to a portion of the public domain, which facts are determined under rules of practice adopted by that department, governing the procedure before officials of the department in the determination of individual rights. (*Johnson v. Towsley,* 80 U. S. 72; *Shepley v. Cowan,* 91 U. S. 330; *U. S. v. Throckmorton,* 98 U. S. 61; *Marquez v. Frisbie,* 101 U. S. 473; *Quinby v. Conlan,* 104 U. S. 420; *Baldwin v. Stark,* 107 U. S. 463; *Bohall v. Stark,* 114 U. S. 47; *Lee v. Johnson,* 116 U. S. 48; *Thornton v. Peery,* 7 Okla. 441; *Estes v. Timmons,* 12 Okla. 537).

And in this case the action of the department in awarding the land to the defendant Dunham must be held conclusive, and the title of his heirs holding under him must

be sustained, unless the allegation in the petition in this court declaring that the conclusion of the department was reached because of false testimony brought before the land official influenced the conclusion reached, when otherwise such conclusion would have been in favor of the plaintiff, should be held sufficient to authorize a reinvestigation of the facts presented before the department, to the extent of determining whether or not the testimony complained of was false, and that the department conclusion was based thereon, which substantially involves a retrial of the case in the court.

This court has determined in the case of *Estes v. Timmons,* 12 Okla. 537, that an allegation in a petition asking that the title in the defendant be declared held in trust for the use and benefit of the plaintiff, is not a sufficient allegation to invoke the equity jurisdiction of the court, where the allegation of perjury by witnesses on the trial of a contest is the only fraud complained of, and such trial involved a complete hearing and investigation of the facts.

The conclusions there reached are conclusive of the question here presented, unless a modification of the same is deemed advisable in presenting a correct exposition of the law; and with this view in mind we have reinvestigated the subject, and after a careful reconsideration of the same we adhere to our former opinion.

The evidence upon which the secretary of the interior reached his final conclusion is not set out in the record. Nor is there set out in the petition or exhibits any specific fact testified to by any witness that is shown to be false, or wherein any witness testified falsely so as to influence the final

conclusion reached in the case.    There is simply the allega-
tion that the defendant Dunham and certain named witnesses
testified falsely touching the plaintiff's residence upon the
land, and in substance that from September, 1893, to 1897,
the plaintiff had been upon the land only occasionally, and
had not resided thereon continually as by the homestead law
required, followed by a declaration that by reason of such
testimony the secretary of the interior was misled.

In their discussion of the question involved in this case
counsel for the plaintiff in error say that the facts alleged
in the petition bring the case squarely within the rule laid
down by the supreme court of this Territory in the case of
*Thornton v. Peery*, 7 Okla. 441, wherein it is stated on page
446:

"It is not sufficient that false testimony was given in
such case.    Before a court of equity will disturb the findings
and judgment of the land department, it must be made to
clearly appear that the false testimony affected their judg-
ment, and controlled their action, and that the judgment
would have been different had the false testimony not been
given.    This cannot be shown by alleging bald conclusions.
The facts must be specifically pleaded, so that the court can
determine from the pleading itself that a different conclu-
sion would have been reached, had the alleged false testi-
mony not been introduced."

It was not intended by the language of Chief Justice
Burford above quoted in the opinion above referred to, to
hold that in a case such as the one under consideration,
where there has been a full and complete hearing for the
purpose of establishing the single question of residence on
land in compliance with the requirements of the homestead
law, in which both parties with full knowledge of the facts

at issue have had full and complete opportunity to be heard and present their proofs establishing such fact, a petition which names certain of the witnesses testifying falsely, without specifying wherein they testified falsely, or that the testimony of such witnesses was the only testimony on the subject, and did affect and control the decision of the secretary of the interior in his decision on the point involved, is a sufficient pleading to invoke the equity jurisdiction of the courts in an action to set aside and reverse the conclusions reached by the secretary. The Chief Justice in the language quoted states, "The facts must be specifically pleaded. This cannot be shown by alleging bald conclusions."

We do not think the allegations of the petition under consideration sufficient to bring the case within the rule stated in *Thornton v. Peery, supra.*

The case of *Mery v. Brodt,* 53 Pac. 818, is cited in support of the position contended for by counsel for plaintiff in error. We have examined that case, and are unable to concur with counsel in the view expressed. To illustrate the distinguishing feature between that case and the one under consideration we quote therefrom:

"This action is inaugurated by a bill in equity, which asks that certain lands be declared by judicial decree to be held in trust by defendant for the use and benefit of plaintiffs, and that a conveyance thereof be made by him to them. The evidence is not in the record, and the appeal from the judgment is to be considered upon the pleading and findings. By the judgment plaintiffs were granted the relief sought.

Without detailing in full the findings of fact made by the trial court, it may be said that the material facts for our consideration are as follows: Plaintiffs were valid and

legal locators of mining claims covering the land in dispute.
They had been such locators for many years, were in the
exclusive possession of the land all of the time, had spent
$20,000 upon the property in mining work, and had com-
plied with all demands of the law tending to support a
valid mining location.   These conditions being present, de-
fendant, Brodt, filed a claim for the land under the timber
act.   In due time he gave his notices, made his proofs and
payments at the land office, and a patent to the land was
issued to him by the land department of the United States.
These proceedings were all had by defendant and the gov-
ernment without any actual notice to plaintiffs, and, con-
sequently, without objection upon their part.   It is found as
a fact that defendant and his witnesses, when making final
proof before the land office upon application for the patent,
testified that the said land was not occupied, and no improve-
ments of any kind thereon; that the land contained no indi-
cations of deposits of any kind of mineral, and was chiefly
valuable for the timber growing thereon; that said testi-
mony was false and fraudulent, and was given for the pur-
pose of misleading and deceiving the officers of the govern-
ment, and that said officers were in fact deceived and misled
thereby.   It was further found that the material allega-
tions of defendant's application, made under oath, were false
and fraudulent, and were made with the intent to deceive
and mislead the officers of the land department, and did so
mislead said officers.   It is also found that one of the wit-
nesses for defendant before the land office was well acquaint-
ed with these lands, and had been upon them at various times,
and examined the work being done by plaintiffs, and was
familiar with such work.   He knew that mining was being

carried on upon the land, that such land was claimed by plaintiffs as a mining claim, and that they had expended many thousands of dollars in the development of the claim, It was further found as a fact that the officers of the land department believed all this testimony, and issued a patent to defendant for these lands based upon this showing."

It will thus be seen that the California court had before it a proposition which has no parallel in the case now before us. The plaintiff in that case was not a party to the proceeding before the land office, and had no actual notice, or knowledge of such proceeding. While in the case under consideration each of the parties had notice, and appeared before the land office, and submitted proofs supporting their respective rights, to the local officers of the department for their determination of the conflicting claims, such proofs were so conflicting, unsatisfactory and inconclusive, that the department ordered the case back to the local office for further hearing and evidence upon the specific question at issue.

In the California case it was made to appear and by the court found as a fact, that the defendant Brodt and his witnesses in making his final proof to the tract involved testified that the land was not occupied, and had no improvements thereon, when as a matter of fact Brodt and his witnesses knew the condition of the land, that plaintiff had a mining claim thereon, and had expended many thousand dollars in the development of it; while in the case under consideration the fact of occupation by both parties was not concealed, and the extent of such occupation by each party is made an issuable fact, to which the evidence of both parties was addressed. It will therefore be seen that

there is no analogy between the two cases, and a determination in the one is not a precedent or reason for a like determination in the other.

The supreme court of California in *Pio Pico v. Julius B. Cohn, Adm'r.*, 13 L. R. A. 336, had before it a case closely analogous to the one under consideration, in which the court say:

(Quoting the syllabus) "Perjured testimony procured by bribery on the part of the successful party is not ground for setting aside a decree, although there is a reasonable certainty that the result of a new trial would be different."

This case was twice before the supreme court of that state for argument, and in the second hearing the first opinion by Chief Justice Beatty was adhered to. That was an action to vacate and annul a final decree in another action between the same parties, on the ground that it was procured by fraud. The facts in that case as shown by the opinion are that Pico, the plaintiff, was an old man over eighty years of age, unable to speak or understand the English language, unused to complicated statements or accounts, and in great distress and trouble regarding his business affairs. He was the owner of $200,000.00 worth of property in Los Angeles, a part of which was about to be sold under a decree of foreclosure, and there were other pressing liens covering the whole property, amounting with the sum necessary to redeem the parcel sold, to about $62,000.00 as then estimated. Pico was anxiously endeavoring to raise the money to effect such redemption and save his property, and applied to one B. Cohn, since deceased, who loaned him the necessary sum, taking for security a grant absolute in terms, reciting a consideration of $62,000.00. Within two

months Pico tendered Cohn $62,000, and demanded a reconveyance, which was refused. An action was brought to set aside the conveyance.

In the conduct of the negotiations between Pico and Cohn, Pancho Johnson was the only other person present, and knew that the transaction was a loan and security, and not a purchase and conveyance absolute; and shortly after the execution of the deed, so stated in the presence of Pico's attorneys and numerous other persons. Upon the trial of the case, however, Johnson testified that it was a sale and absolute conveyance, and the court upon a second and final trial gave credence to Johnson's testimony, and rendered judgment in favor of the defendant, which was finally affirmed by the supreme court; after which it was discovered that Cohn paid Johnson $2,000.00 to testify falsely. The petition to set aside the judgment showed the particulars of this bribery, and that on the morning that Johnson gave his testimony, Cohn placed $2,000.00 in the hands of one Forbes, with directions given in Johnson's presence, to pay it to him if he testified to an absolute sale, and that immediately after he had so testified he demanded and received the money. In commenting upon these facts the court say:

"It is averred, and we think sufficiently shown, that upon proof of these facts there is a reasonable certainty that plaintiff would upon another trial gain his cause. Such being the case, is plaintiff entitled to a decree vacating and annulling the former decree on the grounds that it was procured by fraud? After a careful and extended examination of the authorities, we are constrained to answer this question in the negative. That a former judgment or decree may be set aside and annulled for some frauds there can be no question, but it must be a fraud extrinsic or collateral to

the question examined and determined in the action. And we think it is settled beyond controversy that a decree will not be vacated merely because it was obtained by forged documents or perjured testimony. The reason of this rule is that there must be an end of litigation; and when parties have once submitted a matter, or have had the opportunity of submitting it, for investigation and determination, and when they have exhausted every means for reviewing such determination in the same proceeding, it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon or that the prevailing party by some extrinsic or collateral fraud, has prevented a fair submission of the controversy. What, then, is an extrinsic or collateral fraud, within the meaning of this rule? Among the instances given in the books are such as these: Keeping the unsuccessful party away from the court by a false promise of a compromise, or purposely keeping him in ignorance of the suit; or, where an attorney fraudulently pretends to represent a party, and connives at his defeat, or, being regularly employed, corruptly sells out his client's interest. (*United States v. Throckmorton,* 98 U. S. 65, 66; 25, L. Ed. 95,) and authorities cited. In all such instances the unsuccessful party is really prevented by the fraudulent contrivance of his adversary from having a trial; but when he has a trial he must be prepared to meet and expose perjury then and there. He knows that a false claim or defense can be supported in no other way; that the very object of the trial is, if possible, to ascertain the truth from the conflict of the evidence, and that necessarily the truth or falsity of the testimony must be determined in deciding the issue. The trial is his opportunity for making the truth

·appear.   If, unfortunately, he fails, being overborne by per-- jured testimony, and if he likewise fails to show the injustice that has been done him, on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy. The wrong, in such case, is, of course, a most grevious one, and ·no doubt the legislature and the courts would be glad to redress it if a rule could be devised that would remedy the evil ·without producing mischiefs far worse than the evil to be remedied.   Endless litigation, in which nothing was ever finally determined would be worse than occasional miscarriages of justice; and so the rule is that a final judgment cannot be annulled merely because it can be shown to have been based on perjured testimony; for, if this could be done, it could be done again and again, *ad infinitum.*"

The California court concludes its opinion by the statement:   "We cannot find any substantial ground upon which this case can be distinguished from *U. S. v. Throckmorton,.* *supra,*" relied upon by this court in *Estes v. Timmons, supra.*

From this it will appear that the fraud practiced which is sufficient to set aside a final judgment is one that arises extrinsically, that prevents a party from having a fair trial, or having any trial for the development of the truth in the premises, and not a case where a full, fair and free trial is had or tendered, wherein the person alleged to have been defrauded was present and heard and saw what is alleged to have been the perpetration of a fraud, and had then and there the opportunity to refute it, which he failed to do; or believing himself to have successfully done it, submitted his cause for final determination.   In such case, we hold that the conclusion reached is final, and cannot be reviewed in an action setting out such fraud.

In this we think we are supported by numerous authorities both at common law and under the statute. (See *Hass et al. v. Billings et al.,* [Minn.] 43 N. W. 797, relied upon and affirmed in *Wilkins v .Sherwood,* 56 N. W. 591; *Gray v. Barton,* [Mich.] 23 N. W. 813; *Lee v. Johnson,* 116 U. S. 48; *Cotzhausen v. Kerting,* 29 Fed. 821; *Friese v. Hummell,* [Ore.] 37 Pac. 458.)

Having examined this case with care, we have reached the conclusion that when a case involving title to a part of the public domain is fully and fairly tried in the land department of the United States and the officers of that department have heard the testimony of the witnesses offered by the parties to the controversy, and the case has been submitted to the determination of the department and a final decision has been reached thereon, courts of equity cannot interfere to set aside such decision, upon the ground and for the reason that perjury is charged to have been committed by parties or witnesses in the course of the trial of such controversy in the land department.

The judgment of the court below therefore will be affirmed with costs.

Hainer, J., who presided in the court below, not sitting; all the other Justices concurring.