## WATER AND MINING COMPANY *v.* BUGBEY.

1. The act of March 3, 1853 (10 Stat. 244), granted for school purposes to California the public lands within sections 16 and 36 in each congressional township in that State, except so much of them whereon an actual settlement had been made before they were surveyed, and the settler claimed the right of pre-emption within three months after the return of the plats of the surveys to the local land-office. If he failed to make good his claim, the title to the land embraced by his settlement vested in the State as of the date of the completion of the surveys.
2. In this case, the title of the State to the demanded premises, being part of a school section, having become absolute May 19, 1866, a mining company could, under the act of July 26, 1866 (14 Stat. 253), acquire no right to them.

ERROR to the Supreme Court of the State of California.

The facts are stated in the opinion of the court.

Mr. *Samuel Shellabarger* and Mr. *J. M. Wilson* for the plaintiff in error.

Mr. *Aaron A. Sargent,* contra.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This was an action of ejectment, brought by Bugbey, the defendant in error, against the Natoma Water and Mining Company, the plaintiff in error, to recover possession of a part of the south half of section 16, township 10 north, of range 8 east, Mount Diablo base and meridian, in the State of California. He claimed title by grant from the State, and the company under the act of Congress of March 3, 1853, " to provide for the survey of public lands in California, the granting of pre-emption rights therein, and for other purposes." (10 Stat. 244), and the act of July 29, 1866, " granting the right of way to ditch and canal owners over the public lands, and for other purposes " (14 Stat. 251).

The decision of the Supreme Court of California having been against the title set up by the company, this writ of error was brought. The facts affecting the Federal question in the case are as follows : —

In 1851, the company commenced the construction of a canal upon the unoccupied and unsurveyed public lands of the United

States, for the purpose of supplying water to miners and others. This canal was completed, at large expense, in April, 1853, and the premises in controversy are included within its limits. By the act of March 3, 1853 (10 Stat. 244), Congress provided for the survey of the public lands of California, and granted sections 16 and 36 to the State, for school purposes. By sect. 7 of this act, it was provided, " that where any settlement, by the erection of a dwelling-house, or the cultivation of any portion of the land, shall be made on the sixteenth and thirty-sixth sections, before the same shall be surveyed, . . . other land shall be selected by the proper authorities of the State, in lieu thereof, agreeably to the provisions of the act of Congress approved May 20, 1826, . . ." 4 Stat. 179.

The survey of the lands in controversy was completed May 19, 1866, and the plats deposited in the United States land-office for the district, June 16, 1866. At that time, Bugbey was an actual settler upon the legal subdivision of the section 16 in which the premises are situated, and had thereon a dwelling-house, and agricultural and other improvements. He made no claim under the pre-emption laws of the United States. Other persons were also in possession of other portions of the section. The act of 1853 required (sect. 6) that, " where unsurveyed lands are claimed by pre-emption, the usual notice of such claim shall be filed within three months after the return of the plats of the surveys to the land-offices." On the 28th of September, 1866, the register of the United States land-office certified to the State land-office that no claim had been filed to this section 16, except the pre-emption of one Hancock, which was afterwards abandoned.

Sect. 9 of the act of July 26, 1866 (14 Stat. 253) is as follows : —

" That whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of the courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals, for the purposes aforesaid, is hereby acknowledged and confirmed : . . ."

The company has brought itself within the provisions of this section, if at the time of the passage of the act the United States held title to the lands.

On the 22d of April, 1867, Bugbey purchased the portion of the section on which the premises in controversy are situated from the State of California, and took a patent. The company does not in any manner connect itself with this title, or with that of any other occupant of the section previous to the survey.

In *Sherman* v. *Buick* (93 U. S. 209), it was decided that the State of California took no title to sections 16 and 36, under the act of 1853, as against an actual settler before the survey, claiming the benefit of the pre-emption laws, who perfected his claim by a patent from the United States. In such a case, the State must look for its indemnity to the provisions of sect. 7 of the act. As against all the world, except the pre-emption settler, the title of the United States passed to the State upon the completion of the surveys; and if the settler failed to assert his claim, or to make it good, the rights of the State became absolute. The language of the court is (p. 214): "These things [settlement and improvement under the law] being found to exist when the survey ascertained their location on a school section, the claim of the State to that particular piece of land was at an end; and it being shown in the proper mode to the proper officer of the United States, the right of the State to the land was gone, and in lieu of it she had acquired the right to select other land, agreeably to the act of 1826."

In that case, the controversy was between the settler, who had perfected his title from the United States, and a purchaser from the State. Here the company does not claim under the settler's title, but seeks by means of it to defeat that of the State, and thus leave the land in a condition to be operated upon by the act of July 26. The settler, however, was under no obligation to assert his claim, and he having abandoned it, the title of the State became absolute as of May 19, 1866, when the surveys were completed. The case stands, therefore, as if at that date the United States had parted with all interest in and control over the property. As the act of July 26 was not passed until

after that time, it follows that it could not operate upon this land in favor of the company.

This disposes of the only Federal question in the record.

*Judgment affirmed.*