[Sac. No. 428. Department One.—June 30, 1898.]

M. L. MERY et al., Respondents, v. LINCOLN BRODT, Appellant.

TRUST—MINING CLAIM—TIMBER PATENT—FRAUD—FALSE TESTIMONY.—A bill in equity will lie in favor of the locators of a mining claim who had been for many years in its exclusive possession, had expended large sums of money in developing it, and had complied with all the demands of law to support a valid location of the claim, to enforce a trust against the holder of a patent obtained under the timber act, without actual notice to the mining claimants, and by false and fraudulent testimony that the land was not occupied, contained no improvements thereon, and no indications of deposits of mineral therein, and was chiefly valuable for the timber growing thereon, whereby the officers of the government were deceived and misled and induced by belief of such false testimony to issue the patent.

ID.—CANCELLATION OF PATENT—PRIVITY WITH SOURCE OF TITLE.—It is a rule without exception that when the government has grounds for the cancellation of a patent theretofore issued by it, based upon imposition and fraud, an individual who is properly connected with the paramount source of title may bring an action to enforce a trust against the patentee and compel a conveyance from him.

ID.—OCCUPANCY—RIGHT TO PURCHASE.—A stranger or occupant without right cannot assail a patent for fraud practiced against the government; but an occupant with a right to purchase and obtain a patent from the government may attack a patent issued in fraud of his rights, and upon equitable terms may demand a conveyance from the patentee.

ID.—RIGHTS OF MINING CLAIMANTS—ENFORCEMENT OF TRUST.—A mining claim, properly located and held in accordance with the laws of the federal government, is the property of the locators and transmissible as real estate, needing only a patent to render the title perfect; and until the patent is issued the government holds the title in trust for the locators, or their heirs or vendees; and they occupy such a status as to entitle them to control the legal title and obtain a patent from the government, upon compliance with required conditions, and to enable them to enforce a trust against a fraudulent patentee and compel him to make conveyance of the title.

ID.—TIMBER PATENT—FALSE TESTIMONY—FORFEITURE—TITLE.—A timber patent obtained upon false testimony carries the legal title to the patentee, though the timber act declares that he "shall forfeit the money which he may have paid for the lands, and all right and title to the same; and any grant or conveyance which he may have made, except in the hands of *bona fide* purchasers, shall be null and void." If he has no title, there would be none to forfeit; and his grant to a *bona fide* purchaser could not vest title, unless it rested in the patentee.

ID.—FORFEITED MONEY NOT TO BE RETURNED.—The rule that, when the government attacks a fraudulent patent, the fraudulent patentee is not entitled to a return of his money as a condition precedent to the cancellation of the patent, applies to the enforcement of a trust by the owners of a valid mining claim against a fraudulent patentee who has forfeited his money to the government under the timber act, and the plaintiffs should not be required to make such money good. The labor and expense of prosecuting the action, necessarily entailed by the fraudulent acts of the defendant, counterbalance any alleged claim of equity in his favor.

APPEAL from a judgment of the Superior Court of Butte County. John C. Gray, Judge.

The facts are stated in the opinion of the court.

C. W. Cross, and John Gale, for Appellant.

Richard White, and Park Henshaw, for Respondents.

GAROUTTE, J.—This action is inaugurated by a bill in equity, which asks that certain lands be declared by judicial decree to be held in trust by defendant for the use and benefit of plaintiffs, and that a conveyance thereof be made by him to them. The evidence is not in the record, and the appeal from the judgment is to be considered upon the pleadings and findings. By the judgment plaintiffs were granted the relief sought.

Without detailing in full the findings of fact made by the trial court, it may be said that the material facts for our consideration are as follows: Plaintiffs were valid and legal locators of mining claims covering the land in dispute. They had been such locators for many years, were in the exclusive possession of the land all of the time, had spent twenty thousand dollars upon the property in mining work, and had complied with all demands of the law tending to support a valid mining location. These conditions being present, defendant Brodt filed a claim for the land under the timber act. In due time he gave his notices, made his proofs and payments at the land office, and a patent to the land was issued to him by the land department of the United States. These proceedings were all had by defendant and the government without any actual notice to plaintiffs, and, consequently, without objection upon their part. It

is found as a fact that defendant and his witnesses when making final proof before the land office upon application for the patent testified that the said land was not occupied, and no improvements of any kind thereon; that the land contained no indications of deposits of any kind of mineral, and was chiefly valuable for the timber growing thereon; that said testimony was false and fraudulent, and was given for the purpose of misleading and deceiving the officers of the government, and that said officers were in fact deceived and misled thereby. It was further found that the material allegations of defendant's appli-, cation, made under oath, were false and fraudulent, and were made with the intent to deceive and mislead the officers of the land department, and did so mislead said officers. It is also found that one of the witnesses for defendant before the land office was well acquainted with these lands, and had been upon them at various times, and examined the work being done by plaintiffs, and was familiar with such work; he knew that mining was being carried on upon the land, that such land was claimed by plaintiffs as a mining claim, and that they had expended many thousands of dollars in the development of the claim. It was further found as a fact that the officers of the land department believed all this testimony, and issued a patent to defendant for these lands based upon this showing.

The character of the action here disclosed is a very common one. The judicial reports of this state and other states contain many similar cases. The principle of law involved cannot be questioned, for courts of equity everywhere recognize it. Litigation in these matters is occasioned, not by any dispute of lawyers as to the elementary and basic principles of law bearing upon the case, but in the application of the facts of each individual case to those principles. And it would seem that each individual case has a state of facts peculiar to itself. This is eminently true as to the case at bar, for it is essentially *sui generis* in this, that plaintiffs base their rights upon a *mining location simply*, and as such locators ask that title to land under a United States timber patent issued to defendant be held by him for their benefit. Fraud of the defendant against the United States in the procurement of this patent is abundantly shown. Perjury was committed, and the officers of the government imposed upon and

deceived by such perjury. Under these conditions the government had the right to have the patent canceled; for a fraud of the worst character was perpetrated upon it, and such a fraud as has always been recognized as proper grounds for the cancellation of a patent. These things being true, it may be declared to be the rule without exception that, when the government has grounds for canceling a patent theretofore issued by it, based upon imposition and fraud, then an individual properly connected with the paramount source of title may bring an action similar to that brought by these plaintiffs.

The important question of this case then presents itself, to wit: Are these plaintiffs in such privity with the source of title as to give them a status sufficient to bring this action? And this inquiry necessarily brings us to a consideration of their status as related to the United States. In other words, What is the nature and character of their holding, they being valid locators of mining claims? The locator of a mining claim under the laws of the United States has the right to the exclusive possession and enjoyment of that claim; he has an estate of inheritance; he has a title which can only pass by deed. The land is withdrawn from the public domain. There is an outstanding grant from the United States, and the government has no right to pass any title to a third party. Under the circumstances here shown, it would seem that the status of these plaintiffs as to the land was the same as that of a pre-emption claimant who had made his filing, was in the peaceable and undisputed occupation of the land, and otherwise had complied with all the demands of the law. These parties have been in the adverse and exclusive possession of this property for more than five years, doing all things demanded by the law to validate their title, and far more. Under the Revised Statutes of the United States these facts alone entitled them to a patent upon application. At the time the defendant procured his timber patent these plaintiffs, as against the world, were entitled to a patent, and were in a position to defend their claims against any and all attempting to dispute them.

In the case of *Chism v. Price*, 54 Ark. 258, the court declared: "A stranger or occupant without right cannot assail a patent for fraud, practiced against the state, but an occupant with

a right to purchase may attack a patent issued in fraud of his rights, and upon equitable terms may demand a conveyance from the patentee." In the case of *Noyes v. Mantle*, 127 U. S. 349, in speaking to this question, the court there said: "The claim was thenceforth their property. They needed only a patent of the United States to render their title perfect, and that they could obtain at any time upon proof of what they had done in locating the claim, and of subsequent expenditures to a specified amount in developing it. Until the patent issued the government held the title in trust for the locators or their vendees. The ground itself was not afterward open to sale." In *Aspen etc. Co. v. Rucker*, 28 Fed. Rep. 220, Judge Brewer said: "The statutes of the United States provide that upon performance of certain conditions the discoverer of a mine becomes entitled to a patent. If all these conditions have been performed, the full equitable title is vested in the discoverer, and all that the government retains is the naked legal title in trust for the equitable owner. If only partially performed, he has an absolute right of possession, and an inchoate title which further performance will perfect and complete. Such a right, possessory in its nature, yet coupled under existing laws with further rights as to acquisition of title, is declared by the decisions of the supreme court of Colorado to be a real estate title. Such a property passes to the heir, is subject to seizure and sale as real estate, must be conveyed by deed, and is subject to partition." We find the following language in *Haws v. Victoria C. M. Co.*, 160 U. S. 303: "The possession under a claim established according to law is fully recognized by the acts of Congress, and the patent adds little to the security of the party in the continuous possession of a mine he has discovered or bought." In *Plummer v. Brown*, 70 Cal. 546, this court said: "To entitle the alleged owner, however, to such equitable relief he must show that he occupies such a status as entitles him to control the legal title." This court in *Robinson v. Forrest*, 29 Cal. 320, has declared in express terms what must be the status of a party who seeks the character of relief sought by these plaintiffs. "It is simply necessary that there shall be a privity of title between him and the United States, that is, that he shall possess some right, title, interest or claim in or

to the lands that is permitted by the laws of the United States to be acquired before the final transmission of title, and which is recognized by those laws as a valid, subsisting right, though further acts may be necessary to be performed by both parties before the title finally passes from the United States to the claimant."

Applying the law to the facts of this case, there can be but one conclusion. Indeed, it would be a hard case where a court of equity would sanction a result that would deprive these plaintiffs of their property obtained at the price of many years' labor and twenty thousand dollars' expenditure, and this labor done and money expended under authority of the laws of the United States, and in strict conformity thereto. Tested by *Plummer v. Brown, supra,* it may well be said that these plaintiffs occupy such a status as entitles them to control the legal title. Measured by *Robinson v. Forrest, supra,* it may well be said that these plaintiffs meet all the requirements laid down in that case. We are satisfied they are possessed of a status which gives them authority to bring the action.

The United States statutes, 1877-79, which deal with parties desirous of securing patents under the timber claims act, provide: "If any person taking such oath shall swear falsely in the premises he shall be subject to all the pains and penalties of perjury, and shall forfeit the money which he may have paid for said lands, and all right and title to the same; and any grant or conveyance which he may have made, except in the hands of *bona fide* purchasers, shall be null and void." It is now contended by defendant that under the showing made in this case by the complaint and findings of fact he has no title. That by reason of the express declaration of the statute the patent issued to him is void, and that, consequently, he has no interest which may be conveyed to plaintiffs. No case is cited to support this contention, and we assume there is none. The very fact that the statute declares a fraudulent claimant shall forfeit his title to the land is complete evidence that the United States concedes that by the patent he has the title. If he has no title there would be none to forfeit. Again, by the statute his grant to a *bona fide* purchaser vests the title in such purchaser. This could only be the case where the title rests in the

patentee. The position here taken by appellant would in every case defeat a party in his efforts to secure relief of the character here desired. There is no merit in the contention. As before suggested, it is these very cases where the United States by direct attack may have the patent set aside and canceled upon the ground of fraud, that a claimant connecting himself with the paramount source of title is authorized to ask a court of equity for the relief here sought.

It is next insisted that plaintiffs are entitled to no relief because they have failed to do equity in not paying defendant the expense incurred by him in the procurement of his patent. A court of equity is not inclined to treat the conduct of this defendant kindly. There is nothing in his conduct to commend it to the court. He has been guilty of gross fraud, and equity owes him nothing. The statutes of the United States, already noticed, declare that his money, paid to the government in the consummation of his fraud, shall be forfeited. In *United States v. Minor*, 114 U. S. 238, a case where the government directly attacked a patent it had theretofore issued, it was held that the fraudulent patentee was not entitled to his money, and that a repayment thereof was not a condition precedent to the cancellation of the patent. We are satisfied the same rule should be invoked in favor of these plaintiffs. The money paid by defendant being forfeited to the government by reason of his fraud, these plaintiffs should not be required to make it good. The labor and expense of prosecuting this action, necessarily entailed upon plaintiffs by defendant's fraudulent acts, may well be said to counter-balance any such alleged claim of equity in his favor.

For the foregoing reasons the judgment is affirmed.

Van Fleet, J., and Harrison, J., concurred.