[Civ. No. 3671.  Third Appellate District.—April 15, 1929.]

HYPPOLITE FAVOT, Respondent, v. W. S. KINGSBURY, Appellant.

U. S. Webb, Attorney-General and H. H. Linney, Deputy Attorney-General, for Appellant.

Rowan Hardin for Respondent.

JAMISON, J., *pro tem.*—This appeal is by W. S. Kingsbury alone, is brought up on the judgment-roll and the facts found by the trial court are admitted to be true.

That court found that on June 14, 1880, the plat of survey of section 16 in township 1 south, range 15 east, Tuolumne County, California, containing the premises in controversy was accepted by the department of the interior, and that at that date no mining claims were shown to be in said section, and that same was not returned by the United States deputy mineral surveyor as being mineral in character, and that on said date title to said section and all mineral contained therein vested in the state of California by virtue of a school land grant contained in the act of March 3, 1853, 10 U. S. Stat. 244–246; that on April 1, 1897, an act of the legislature of the state of California was approved, said act being entitled "An act to repeal an act entitled 'An act regulating the sale of mineral lands belonging to the state' approved March 28, 1874, and the act amendatory thereof, and to provide for the sale of mineral lands under United States law," the same being chapter 270, Statutes of 1897, page 438. Sections 2 and 3 of said act read as follows:

"Sec. 2. When it shall be shown by affidavits or otherwise, to the satisfaction of the Surveyor General, that any portion of a sixteenth or thirty-sixth section belonging to the State is valuable for its mineral deposits, the Surveyor General shall not approve any application to purchase the same, nor shall the Register of the State Land Office issue a certificate of purchase therefor, until the question of the character of the land has been referred, for determination, to a court of competent jurisdiction, in the manner provided by Section thirty-four hundred and fourteen of the Political Code, and adjudged not to be valuable as mining land.

"Sec. 3. The sixteenth and thirty-sixth sections. belonging to the State, in which there may be found valuable mineral deposits are hereby declared to be free and open to exploration, occupation, and purchase of the United States, under the laws, rules, and regulations passed and prescribed by the United States for the sale of mineral lands.''

In the year 1900 respondent, a citizen of the United States, located the Feliciana quartz mine, including portions of lots 1, 2, 7 and 8 in said section 16, amending same in December, 1900, same being duly recorded; that since that date respondent has continuously held, worked and operated said mine, sinking shafts, running drifts and performing general work thereon and performing the annual assessment work of $100 per annum and has expended work and labor and placed improvements thereon to the amount of $10,000; that said mining claim contains a vein of gold-bearing quartz from twelve to forty feet in width assaying from $5 to $7 per ton; that on March 30, 1903, respondent duly located the Diablo quartz mining claim adjoining the said Feliciana mining claim, and situated in said section 16, and on this claim he has expended work and labor and placed improvements to the amount of $5,000 and has done the annual assessment work thereon. There are several veins of quartz. on the claim averaging from $2.50 to $3 per ton.

In the year 1901 respondent filed in the office of appellant his affidavit showing the land embraced in the said Feliciana mining claim to be valuable for mineral deposits and at said time filed with said affidavit a plat and survey showing. the said location as it existed on the ground, which affidavit. and plat was received by the surveyor-general and filed in

his office. On January 24, 1918, respondent communicated with appellant and at that time appellant wrote him that if the aforesaid lots in said section sixteen contained valuable mineral deposits, that same were open to exploration, occupation and purchase by the United States under the laws, rules and regulations prescribed by the United States for the sale of mineral lands in accordance with the provisions of section 3 of said act of 1897. On the ninth day of June, 1920, while respondent was temporarily absent from the county of Tuolumne the aforesaid lots were sold at public auction by appellant, as surveyor-general of the state of California, pursuant to the provisions of chapter 389, Statutes of 1915, page 605, to defendants Holmes, Corcoran and Knowles, and on the tenth day of June, 1920, said Knowles deeded a half-interest in said lot 7 to defendant Webb. All of said defendants, at the time of the sale of said land and prior thereto, knew and had known that respondent was in possession of the said mining claims and that respondent claimed possession of same by virtue of said mining locations and that he had for many years worked said property for the minerals contained therein; that on June 18, 1920, when respondent returned to said county of Tuolumne and learned of said sale he filed in the office of appellant an application to contest the sale of said property; and that in June, 1920, he also filed a contest in the United States land office at Sacramento, but the land department of the United States dismissed same for the reason that the title to said section 16, together with the mineral therein contained, passed to the state of California upon the approval of the survey thereof in 1880 and that, therefore, the land department of the United States had no jurisdiction to entertain respondent's contest.

Appellant refused to refer the matter of the contest of the character of said land to the superior court of said county of Tuolumne, but, unless restrained by the court, will prepare and forward to the Governor of the state of California a patent for said land in favor of said defendants Holmes, Corcoran and Knowles.

The judgment of the court, in substance, was that appellant, as surveyor-general of the state of California and *ex-officio* register of the state land office, be enjoined and restrained from preparing a state patent from the state of

California to said defendants Holmes, Corcoran and Knowles for any part of said lots embraced within the exterior boundaries of the said mining claims, and from sending such patent to said Governor with recommendation and certificate to the effect that said defendants Holmes, Corcoran and Knowles are entitled to a patent for said lands so embraced within the boundaries of said mining claims; and also that said defendants be enjoined and restrained from asserting any title in or to, or right of possession of said lands lying within the boundaries of said mining claims.

Chapter 389, Statutes of 1915, approved May 19, 1915, provided that the surveyor-general should sell at public auction all the unsold portions of the five hundred thousand acres granted to the state for school purposes, and the unsold portions of the listed land selected of the United States in lieu of the sixteenth and thirty-sixth sections, and losses to the school grant, and repealed all acts in conflict with that act. It was under the alleged authority conferred by this act that appellant sold the said sixteenth section to the said defendants Holmes, Corcoran and Knowles.

Appellant contends that respondent, having failed to take advantage of the said act of 1915, or preceding acts, to acquire from the state title to the land embraced within the boundaries of his said mining claims, has, by the sale of said sixteenth section to defendants Holmes, Corcoran and Knowles, lost his right to acquire such title, and that by virtue of the provisions of section 17 of chapter 303, Statutes of 1921, page 404, as amended by chapter 385, Statutes of 1923, page 593, he has become a trespasser upon said section 16.

Said section 17 provides in substance that any person who has entered upon lands coming under the provisions of this act (lands upon which there are mineral deposits) and is holding or developing such land, is guilty of a trespass, and the claims being exerted are declared null and void, and any property placed upon said land is forfeited to the state.

It is conceded that, because of the fact that when the title to said section 16 passed from the United States to the state of California in 1880, no mining claims were shown to be in said section, and that same had not been returned by the United States deputy surveyor as being mineral in character, not only did the state acquire title to said section

16, but also to all mineral therein contained. (*United States* v. *Sweet,* 245 U. S. 563 [62 L. Ed. 473, 38 Sup. Ct. Rep. 193]; *Ivanhoe Min. Co.* v. *Keystone Consolidated Min. Co.,* 102 U. S. 167 [26 L. Ed. 126]; *Natoma Water & Min. Co.* v. *Bugbey,* 96 U. S. 165 [24 L. Ed. 621, see, also, Rose's U. S. Notes]; *Saunders* v. *La Purisima Co.,* 125 Cal. 159 [57 Pac. 656].)

Section 2 of the act of 1897 prohibited the surveyor-general, when it was shown by affidavit or otherwise, to his satisfaction, that any portion of said section 16 is valuable for mineral deposits, from approving any application for the purchase of same, and also prohibited the register of the state land office from issuing any certificate of purchase therefor, until the question of the character of the land had been referred for determination to a court of competent jurisdiction and had been adjudged not to be valuable as mining land. It does not appear that any such reference was ever made. Though it does appear that appellant was satisfied, from the affidavit that was filed in his office by respondent, that the lands embraced within the boundaries of respondent's mining claims contained valuable mineral deposits, for we find that respondent alleged in his complaint that during the year 1902 he communicated with appellant and asked him whether or not he had received the said affidavit and plat, and in reply to that communication appellant stated that he had received them and that respondent's mining locations were all right and that he would have no trouble, and this allegation was not denied by appellant. Under these conditions it was clearly the duty of appellant to withhold the land so claimed to contain valuable mineral deposits from sale until its character in that respect had been judicially determined.

The trial court held, as a conclusion of law, that the act of 1897 was not repealed, as to the rights acquired thereunder, by the act approved May 19, 1915, and in this conclusion we are of the opinion that the trial court committed no error. The said act of 1915 merely changed the method by means of which the unsold portions of sections 16 and 36 could be sold, and of course would have application only to such land as the surveyor-general was authorized to sell; that is to say, that if pursuant to the provisions of section 2 of said act of 1897 it had been shown to the satisfaction of

the surveyor-general, by affidavits or otherwise, that any portion of sections 16 or 36 were valuable for mineral deposits, it was his duty to withhold the same from sale until the character of said land had been judicially determined, and same had not been adjudged valuable as mining land.

In 1921 an act of the legislature was passed and approved (Stats. 1921, p. 1305), repealing the said act of the legislature of 1897, but providing, "such repeal shall be without prejudice to any rights or remedies of any person acquired under said act prior to February 15, 1921, or to any defense then existing on behalf of the state, or any officer thereof, for any act performed in his official capacity, but all such rights, remedies and defenses are hereby expressly reserved to all such persons and to the state and its officers respectively."

It is manifest that by the act of 1897 the legislature intended to permit the sixteenth and thirty-sixth sections to be exploited, occupied and purchased where valuable mineral deposits were located upon them, in the same manner that the United States permitted same to be done. It is also manifest that the legislature in passing the said act of 1897 labored under the erroneous belief that this purchase would have to be from the United States. However that may be, it was the intent of the legislature, as shown by this act of 1897, to encourage the development of minerals upon the said sections.

Under the sanction of this act respondent entered upon that portion of said sixteenth section covered by his mining claims, has fully complied with all the requirements of the act and in so doing has expended considerable sums of money in the development of said claims and in placing improvements thereon, and all this has been done with the knowledge of this appellant and the other defendants.

In the case of *Mery* v. *Brodt*, 121 Cal. 332 [53 Pac. 818], the Supreme Court, speaking of the nature and character of the holding of the locator of a mining claim, said: "The locator of a mining claim under the laws of the United States has the right to the exclusive possession and enjoyment of that claim; he has an estate of inheritance, he has a title which can only pass by deed. The land is withdrawn from the public domain. There is an outstanding grant from the United States, and the Government has no

right to pass any title to a third party.'' It is clear that it was the intention of the legislature, by the said act of 1897, to invest the locator of a mineral claim in the sixteenth or thirty-sixth sections with the same rights therein that were given the locator upon government land. ▮ Such being the case, respondent acquired a vested right to continue in the occupation and exploration of his. said mining claims as long as he continued to comply with the requirements of said act of 1897. ▮ The state has no power to divest or to impair vested rights whether such attempt be made by legislative enactment by municipal ordinance or by change in the constitution of the state. (12 Cor. Jur., p. 956; *Estate of Wellings,* 197 Cal. 189 [240 Pac. 21]; *Richmond Wharf & Dock Co.* v. *Blake,* 39 Cal. App. 1 [177 Pac. 508]; *James* v. *Oakland Traction Co.,* 10 Cal. App. 785 [103 Pac. 1082]; 6 Eng. & Am. Ency., p. 955.)

Regarding the questions as to whether or not respondent can acquire title to his said mining claims, and if so what procedure should be followed in so doing, we are not called upon to determine on this appeal.

We are of the opinion that the findings are sustained by the admitted facts of this case and that the judgment should be affirmed, and it is so ordered.

Plummer, J., and Finch, P. J., concurred.