[Civ. No. 63644. Second Dist., Div. Five. June 25, 1982.]

LESTER E. OLSON et al., Plaintiffs and Respondents, v. KENNETH CORY, as State Controller, et al., Defendants and Appellants.

86

COUNSEL

George Deukmejian, Attorney General, Richard D. Martland, Assistant Attorney General, and Henry G. Ullerich, Deputy Attorney General, for Defendants and Appellants.

Stroock & Stroock & Lavan, William H. Levit, Henry J. Silberberg and Margaret A. Nagle for Plaintiffs and Respondents.

OPINION

LAVINE, J.*—This is an appeal from a judgment granting plaintiffs' motion for judgment on the pleadings and/or summary judgment and declaring that article III, section 4 of the California Constitution, as amended and adopted at the November 4, 1980, General Election, cannot constitutionally be applied to adjust the salary of active judges during their term of office, or adjust the retirement benefits of retired judges calculated on the basis of the salary of active judges.

THE FACTS

The undisputed facts are as follows: In 1980 the California Supreme Court held that statutory amendments to Government Code section 68203 could not be applied prospectively to adjust salaries of judges during their term of office. (*Olson* v. *Cory* (1980) 27 Cal.3d 532 [178 Cal.Rptr. 568, 636 P.2d 532], (hereinafter *Olson* v. *Cory I*).)

On November 4, 1980, at a general election the people of the State of California amended article III, section 4 of the State Constitution to provide as follows:

"(a) Except as provided in subdivision (b), salaries of elected state officers may not be reduced during their term of office. Laws that set these salaries are appropriations.

"(b) Beginning on January 1, 1981, the base salary of a judge of a court of record shall equal the annual salary payable as of July 1, 1980, for that office had the judge been elected in 1978. The Legislature may

---

*Assigned by the Chairperson of the Judicial Council.

prescribe increases in those salaries during a term of office, and it may terminate prospective increases in those salaries at any time during a term of office, but it shall not reduce the salary of a judge during a term of office below the highest level paid during that term of office. Laws setting the salaries of judges shall not constitute an obligation of contract pursuant to Section 9 of Article I or any other provision of law."

Twelve active and retired judges then filed a class action in 1980 for mandamus, injunctive and declaratory relief, alleging that the 1980 amendment to the state Constitution could not alter the pay structure in effect immediately prior to the election until the end of the "protected terms" for those judges falling within "protected terms." The grounds for this contention included the contract clause and due process clause of the state and federal Constitutions and principles of res judicata and collateral estoppel. All unnamed class members were dismissed on motion of plaintiffs, and the case was no longer a class action.

The trial court granted plaintiffs' motion for summary judgment, denied defendants' motion for judgment on the pleadings and entered a declaratory judgment from which an appeal was taken.

California judges first assume office through election or appointment. If appointed, the appointee appears on the ballot at the first general election at which the appointee has a right to become a candidate. Once elected, the term of an appellate court judge is 12 years and superior court judge is 6 years. (Cal. Const., art. VI, § 16.) Since 1964, the amount of judicial salaries has been prescribed by Government Code sections 68200-68202, subject to increases as provided for in section 68203.

Section 68203, as amended in 1969, provided: "In addition to the increase provided under this section on September 1, 1968, on the effective date of the 1969 amendments to this section and on September 1 of each year thereafter the salary of each justice and judge named in Sections 68200 to 68202, inclusive, shall be increased by that amount which is produced by multiplying the then current salary of each justice or judge by the percentage by which the figure representing the California consumer price index as compiled and reported by the California Department of Industrial Relations has increased in the previous calendar year."

Section 68203 was again amended in 1976, effective January 1, 1977, to provide: "On July 1, 1978, and on July 1 of each year thereafter the salary of each justice and judge named in Sections 68200 to 68202, inclusive, shall be increased by that amount which is produced by multiplying the then current salary of each justice or judge by the percentage by which the figure representing the California consumer price index as compiled and reported by the California Department of Industrial Relations has increased in the previous calendar year, *but not to exceed five percent (5%)*." (Italics added.)

Section 68203 was further amended in 1979, effective January 1, 1980, as follows: "On July 1, 1980, and on July 1 of each year thereafter the salary of each justice and judge named in Sections 68200 to 68202, inclusive, shall be increased by that amount which is produced by multiplying the then current salary of each justice or judge by the average percentage salary increase for the current fiscal year for California State employees *but not to exceed five percent*, provided, however that if in either of the two previous fiscal years the average salary increase for state employees was less than five percent, the judges or justices shall in addition receive that portion of a current increase in excess of five percent which they would have been entitled to had the increases in the two previous fiscal years each been equal to five percent.

"(b) For the purposes of this section, salary increases for state employees shall be such increases as reported by the California Office of Employee Relations.

"(c) The salary increase for judges and justices made on July 1, 1980, for the 1980-81 fiscal year, *shall in no case exceed five percent*." (Italics added.)

The pension to which retired judges and spouses of deceased judges were and are entitled is a percentage of the salary payable at the time payment of the pension falls due to the judge holding the judicial office to which such retired or deceased judge was last elected to or appointed.

*Olson* v. *Cory I*, held that the 1976 amendment to Government Code section 68203 could not be applied constitutionally to (1) judges during any term or any unexpired term of a predecessor judge if some portion of such term (a "protected term") was served prior to January 1, 1977; and to (2) judicial pensioners whose benefits are based on some propor-

tionate amount of the salary for the office of such judges. The court declared that all sitting judges have, during their term of office, contractual rights to the compensation provided by law at the commencement of the term; and judicial pensioners have vested rights. The court noted that this decision would create a disparity in salaries and that such ". . . disparity will continue, in the case of trial judges, no later than the first Monday in January 1981 and, in the case of appellate justices, no later than the first Monday in January 1987." (27 Cal.3d at p. 547.)

The state constitutional amendment in November 1980 was intended to eliminate that disparity. The ballot pamphlet described the change:

"Because of the court's ruling, there is now a two-tier salary structure for judges, one based on the 1976 law and a higher one based on the 1969 law. Thus, as of January 1981:

"Four associate judges of the Supreme Court will be paid $88,685 annually, while the other two associate judges will be paid $72,855.

"Twenty-three judges of the courts of appeal will be paid $83,143, while the other 36 judges of these courts will be paid $63,303.

"As their terms expire, the base salaries of the judges receiving these higher amounts will be reduced to the same levels as those paid to the other judges whose salary increases are limited to 5 percent annually.

"Pensions of certain retired judges and their survivors also increased as a result of the Supreme Court's ruling, because pension benefits are tied to active judges' salaries. Generally, a retired judge receives an allowance equal to either 65 percent or 75 percent of the current salary paid to the judge holding the office to which the retired judge was last elected.

"Proposal:

"This measure would amend the State Constitution to produce the following effects:

"It would eliminate, effective January 1, 1981, the additional pay being received by each judge whose base salary was increased as a result of the Supreme Court's ruling.

"It would eliminate, effective January 1, 1981, the additional pension benefits being received by each retired judge (or survivor) as a result of the court's ruling.

"It would authorize the Legislature to terminate expected *increases* in judges' salaries *during* their term of office, provided that such action does not cause a reduction in the actual salaries paid to judges during their term.

"It would specifically provide that salaries of judges are not considered an obligation of contract." (Italics in original.)

The Controller is paying plaintiffs in accordance with article III, section 4, as amended November 4, 1980.

### THE ISSUES

1. Is article III, section 4 of the California Constitution, as amended, ineffective as applied to the "protected" class of judges under the:

a. Impairment of contracts clause of the federal Constitution?

b. Due process clause of the 14th Amendment to the federal Constitution?

2. Is article III, section 4, of the California Constitution, as amended, ineffective as applied to the "protected" class of judges under the impairment of contracts and due process clauses of the California Constitution?

3. Do the doctrines of res judicata and estoppel by judgment preclude defendants from relitigating issues determined in *Olson* v. *Cory I* as to:

a. Issues falling within the federal Constitution?

b. Issues falling within the California Constitution?

4. Does the doctrine of stare decisis compel this Court of Appeal to uphold plaintiffs' rights as adjudicated in *Olson* v. *Cory I* as to:

a. Issues falling within the federal Constitution?

b. Issues falling within the California Constitution?

## CONFLICT OF INTEREST

At the outset we revisit the subject of conflict of interest. *Olson* v. *Cory I, supra,* 27 Cal.3d 532, states at page 537: "We consider first whether we may hear and adjudicate the cause, recognizing each member of this court is financially interested in the outcome. The rule of necessity provides that a judge is not disqualified from adjudicating a cause because of personal financial interest if there is no other judge or court available to hear and resolve the cause. [Citation.] It is immediately apparent that all California judges have at least an involuntary financial interest in this case. To disqualify one would disqualify all, depriving them and their surviving spouses of opportunity to litigate their case. This court as now constituted is qualified to hear and determine the issues before us."

This holding by the California Supreme Court is reinforced by the later case of *United States* v. *Will* (1980) 449 U.S. 200 [66 L.Ed.2d 392, 101 S.Ct. 471], dealing with federal laws stopping or reducing previously authorized cost-of-living increases for federal judges. The court observes (449 U.S. at p. 210 [66 L.Ed.2d at p. 403]): "Although it is clear that the District Judge and all Justices of this Court have an interest in the outcome of these cases, there is no doubt whatever as to this Court's jurisdiction." The historical foundations of the rule of necessity being discussed (449 U.S. at pp. 212-217 [66 L.Ed.2d at pp. 404-407]), the court quoted F. Pollack, A First Book of Jurisprudence (6th ed. 1929) 270 at page 213 [66 L.Ed.2d at page 405], as follows: "'[A]lthough a judge had better not, if it can be avoided, take part in the decision of a case in which he has any personal interest, yet *he not only may but must do so if the case cannot be heard otherwise.*'" (Italics added.)

## DISCUSSION

Much of *Olson* v. *Cory I,* is directly applicable and binding in *Olson* v. *Cory II* at bar. *Olson* v. *Cory I* holds at pages 537-538: "We recognize the often quoted language that public employment is not held by contract and therefore is not protected by the contract clause.... On the other hand, we deal here with the right to compensation by persons serving their term of public office to which they have undisputed rights. '[P]ublic employment gives rise to certain obligations which are protected by the contract clause of the Constitution....' [Citations.] Promised compensation is one such protected right. [Citation.] Once vested, the

right to compensation cannot be eliminated without unconstitutionally impairing the contract obligation. [Citation.] When agreements of employment between the state and public employees have been adopted by governing bodies, such agreements are binding and constitutionally protected. [Citations.] In the instant case the Legislature in 1969 adopted the full cost-of-living increase provision, binding the state to pay persons employed at the represented compensation for their term of office."

The court then set forth the circumstances in which it is constitutionally permissible to impair a vested right under a contract, and reaffirmed the standards adopted by the United States Supreme Court concerning article I, section 10, clause 1 of the United States Constitution: "No State shall . . . pass any . . . Law impairing the obligation of contracts. . . ." The court held at 27 Cal.3d 532, 539:

"In *Sonoma County Organization of Public Employees* v. *County of Sonoma, supra,* 23 Cal.3d 296 [152 Cal.Rptr. 903, 591 P.2d 1], this court reiterated the four factors identified by the United States Supreme Court in *Home Building and Loan Assn.* v. *Blaisdell* (1934) 290 U.S. 398 . . . warranting legislative impairment of vested contract rights. Those factors are: (1) the enactment serves to protect basic interests of society, (2) there is an emergency justification for the enactment, (3) the enactment is appropriate for the emergency, and (4) the enactment is designed as a temporary measure, during which time the vested contract rights are not lost but merely deferred for a brief period, interest running during the temporary deferment. [Citation.]

"In applying these standards the enactment's severity must be measured to determine 'the height of the hurdle the state legislation must clear.' (*Allied Structural Steel Co.* v. *Spannaus* (1978) 438 U.S. 234 . . . .) This court stated in *Sonoma County* that impairing a granted increase in wages goes to the heart of the employment contract and is therefore severe and permanent. [Citation.] Therefore the state's hurdle in applying the four factors in the instant case is heightened because section 68203 is an impairment affecting the heart of the employment contract.

"Defendants, offering no reason or justification for the state action, fail even to approach their burden of demonstrating the impairment of plaintiffs' rights is warranted by an 'emergency' serving to protect a 'basic interest of society.'"

We note that the language of Proposition 11 which amended article III, section 4 of the California Constitution does not even attempt to set forth or justify its compliance with the factors set forth in *Home Building and Loan Association, supra, 290 U.S. 398.* Nor do defendants endeavor to show that the amended article III, section 4 meets the federal criteria for constitutionality under the contracts clause (or Fourteenth Amendment due process, infra). Neither the legislative analyst nor those arguing in favor or against Proposition 11 contend that this is an assertion of the "police power" by the people of California.

The court in *Olson* v. *Cory I* concludes at page 540: "A judge who completes one term during which he was entitled to unlimited cost-of-living increases and elects to enter a new term has impliedly agreed to be bound by salary benefits then offered by the state for the different term. Thus, while a judge is entitled to a salary based on unmodified Government Code section 68203 throughout a term ending, for instance, in 1978, his salary for a new term beginning on or after the effective date of the 1976 amendment—1 January 1977—will be governed by the statute as amended. Likewise, a judge entering office for the first time on or after 1 January 1977, including a judge entering upon his own term or upon the unexpired term of a predecessor judge, cannot claim any benefit based on section 68203 before the 1976 amendment."[1]

1. ■ Is California Constitution article III, section 4, as amended by Proposition 11 ineffective as applied to the protected class of judges? Yes.

a. *Olson* v. *Cory I*, held that the public employment of judges gives rise to certain rights such as that of promised compensation; that this right to promised compensation may (and does as to the "protected" of judges) become a vested right; and that this vested right could not be impaired by the State of California unless the statute seeking to impair the contract met the criteria of *Home Building and Loan Assn.* v. *Blaisdell, supra,* 290 U.S. 398 and *Allied Structural Steel Co.* v.

---

[1]Since California Constitution, article III, section 4, itself was amended, plaintiffs do not contend (as they did in *Olson* v. *Cory I*) that there is an unconstitutional reduction of judicial salaries during judges' terms of office in derogation of the original article III section 4. Hence we disregard this point, which, if urged, would indeed be circular reasoning.

*Spannaus, supra,* 438 U.S. 234. (*Olson v. Cory I, supra,* 27 Cal.3d 532 at pp. 538-539.)[2]

Defendants argue that *Olson v. Cory I* did not squarely hold that the "protected" class of judges possessed a vested contract right that was impermissibly impaired by the offending legislation. We find that the quoted language on pages 538-539 does so squarely hold. Moreover, the Supreme Court affirmed the trial court judgment which was decided in part upon the federal constitutional issues, stating at pages 536-537: "The statute as amended was held unconstitutional by the superior court on grounds it constitutes an impermissible impairment of vested contractual rights (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9) ..." Moreover defendants admit in their answer to the complaint that the *Olson v. Cory I* holding was based in part upon the contract clause of the federal Constitution.

Does it make any difference that in *Olson v. Cory II* we deal with a constitutional amendment rather than a legislative statute as in *Olson v. Cory I?* From a federal constitutional standpoint this is a distinction without a difference, as contract rights are protected from state impairment from whatever source. The contract clause of the federal Constitution "... applies to any enactment to which the state gives the force of law, including its Constitution." (*Lyon v. Flournoy* (1969) 271 Cal.App.2d 774, 779 [76 Cal.Rptr. 869].) In *Russell v. Sebastian* (1914) 233 U.S. 195, 210 [58 L.Ed. 912, 923-924, 34 S.Ct. 517], the United States Supreme Court held that an amendment to the California Constitution could not operate to take away a vested contractual right. California cases to the same effect are *Favot v. Kingsbury* (1929) 98 Cal.App. 284, 291 [276 P. 1083] and *Oakland Paving Co. v. Barstow* (1889) 79 Cal. 45, 47 [21 P. 544].

In *Solvang Mun. Improvement Dist. v. Board of Supervisors* (1980) 112 Cal.App.3d 545, 550 [169 Cal.Rptr. 391] the court held that a provision of the California Constitution cannot be applied retroactively to impair the obligation of contracts.

---

[2]"Until recent years, the contracts clause of the Constitution was thought to be a dead letter. After vigorous application in the nineteenth century, the clause—along with other judicial devices for protecting economic rights—fell into disuse in the late 1930s. During the following four decades, the Supreme Court invoked the clause only twice. In 1977, however, the Court invalidated the repeal of a public bond covenant on grounds of contract impairment. The following year, the Court overturned a state pension law as imposing unbargained-for obligations upon a party to a private contract. These decisions have signaled a new activism in the Supreme Court's use of the contract clause to protect economic rights." (Fns. omitted.) (Note, *A Process-Oriented Approach to the Contracts Clause* (1980) 89 Yale L.J. 1623, 1623-1624.)

A similar result was reached by the Michigan Supreme Court in *Campbell* v. *Michigan Judges Retirement Board* (1966) 378 Mich. 169 [143 N.W.2d 755, 757]: "[The] Michigan Constitution of 1908 . . . and Article I, Section 10 of the United States Constitution, prohibit the impairment by state law of the obligation of a contract. Vested rights acquired under contract may not be destroyed by subsequent State legislation or *even by an amendment of the State Constitution. . . .*

"When . . . [the plaintiffs] so retired and ceased to be members of the system, their contract was completely executed and their rights thereunder became vested. These could not, thereafter, be diminished or impaired by legislative change of the judges retirement statute." (Italics added.)[3]

Defendants contend that the question of the application of the contracts clause of the federal Constitution is a question of federal law to be determined by the United States Supreme Court rather than the California Supreme Court and that federal law defines vested contract rights of governmental officers in a different way than does California. First of all, it is the obligation of all state courts (as it is of all federal courts) to follow the Constitution of the United States which is the supreme law of the land. (U. S. Const., art. VI, cl. 2 and Cal. Const., art. III, § 1.) Since the adoption of the United States Constitution this has been a concurrent obligation of the state courts.[4]

Second, the problem involves deciding both state and federal law —not merely federal law.[5] We look to California law rather than feder-

---

[3]An example in another field of the right and obligation of the California Supreme Court to strike down a provision of the California Constitution is *Mulkey* v. *Reitman* (1966) 64 Cal.2d 529 [50 Cal.Rptr. 881, 413 P.2d 825], in which the court struck down article I, section 26 (Prop. 14) prohibiting the state from interfering with a person's absolute discretion to decline to sell or lease his property to whomever he chooses. The court stated at page 533: "We note preliminarily that although we are examining a provision which, by its enactment by ballot, has been accorded state constitutional stature, the supremacy clause of the United States Constitution nevertheless compels that section 26, like any other state law, conform to federal constitutional standards before it may be enforced against persons who are entitled to protection under that Constitution."

[4]Prior to the Judiciary Act of 1875 (18 Stat. 470) state courts were relied upon to decide almost all federal question cases in the first instance. Alexander Hamilton predicted such utilization of state courts in The Federalist No. 82: "[B]ut I hold that the state courts will be divested of no part of their primitive jurisdiction, further than may relate to an appeal; and I am even of opinion, that in every case in which they were not expressly excluded by the future acts of the national legislature; they will of course take cognizance of the causes to which those may give birth."

[5]The distinction is well stated in Hale, *The Supreme Court and the Contract Clause: III*, (1944) 57 Harv.L.Rev. 852, 869: "The nature and extent of the obligation, howev-

al law to ascertain whether plaintiffs' rights are protected by contract. *Olson* v. *Cory I* says, "Yes." However, the last sentence of Proposition 11 states: "Laws setting the salaries of judges shall not constitute an obligation of contract pursuant to Section 9 of Article 1 or any other provision of law." Does that constitutional amendment change the applicable law of California with regard to judicial contract rights? Yes, for the future. No, insofar as the vested contractual rights of plaintiffs are concerned. In construing the federal contracts clause, the process is as follows: First, the reviewing court must look to the definition of contract rights as defined in a particular state (in this case, California) prior to the statute or state constitutional amendment changing such state law. Second, the reviewing court follows the constitutional decisions of the United States Supreme Court defining the effect of the federal contracts clause. If the legislative change or state constitutional amendment falls afoul of the federal contracts clause, the change may have only prospective but not retrospective effect.

Defendants cite *United States* v. *Will, supra,* 449 U.S. 200 as favoring their position. Interlocking federal statutes fix the compensation of high-level federal officials including federal judges, and provide for annual cost-of-living adjustments determined the same way as for federal employees generally. In four consecutive fiscal years Congress enacted statutes to stop or reduce previously authorized cost-of-living increases intended to become automatically operative. In years 2 and 3 the statutes became law before the start of the fiscal year, and in years 1 and 4 became law after the first day of the respective fiscal year. The court held that the statutes for years 1 and 4 were ineffective because they violated the constitutional provision against diminishing a judge's salary

---

er, are federal questions only in the sense that federal courts must decide them, but they are federal questions of *state* law. In deciding such questions, federal courts must consider state decisions. What the obligation was at the time when the statute under review was enacted depends on the settled rule of state decisions made prior thereto, if there had been any such settled rule."

Federal courts retain the power to determine what the state law is in order to insure that a state court (or legislature or constitutional amendment) by a new construction of state law, does not permit an impairment of contract. The federal courts do not look to federal law to see whether a contract exists and the scope thereof, because the original state law has determined the contract rights which are in question. In *Indiana* ex rel. *Anderson* v. *Brand* (1938) 303 U.S. 95 [82 L.Ed. 685, 58 S.Ct. 443, 113 A.L.R. 1482] the Supreme Court looked at Indiana law to determine whether a teacher had a vested contractual right to her position. The court said at page 100 [87 L.Ed. at page 691]: "On such a question, one primarily of state law, we accord respectful consideration and great weight to the views of the State's highest court but, in order that the constitutional mandate may not become a dead letter, we are bound to decide for ourselves whether a contract was made . . . ."

while in office. For years 2 and 3 they did not violate the constitutional provision since they became law before the salary was in effect.

The court held (449 U.S. at p. 229 [66 L.Ed.2d at p. 414]): "...[T]hat a salary increase 'vests' for purposes of the Compensation Clause only when it takes effect as part of the compensation due and payable to Article III judges. With regard to Year 2, we hold that the Compensation Clause did not prohibit Congress from repealing the planned but not yet effective cost-of-living adjustment of October 1, 1977, when it did so before October 1, the time it was first scheduled to become part of judges' compensation. The statute in Year 2 thus represents a constitutionally valid exercise of legislative authority."

The United States Supreme Court reached a different result with respect to federal laws changing future increases in judicial compensation than did the California Supreme Court with respect to state statutes. This difference in result does not mean *Olson* v. *Cory I* is erroneous, because:

(1) Federal article III judges are appointed for life, in contrast to California judges who are elected for specific terms;

(2) The federal rule as to vesting of contract rights is different than the California rule;

(3) The United States Supreme Court was only concerned with the federal constitutional provision preventing diminution of judicial salaries. It was not concerned with the Fifth Amendment prohibition against deprivation of vested property rights, since it had held that the federal judges had no vested rights until the start of a particular fiscal year;

(4) Under stare decisis this court is bound by *Olson* v. *Cory I*, on the issue discussed above whether or not it be termed "erroneous" by defendants.

Therefore, following the law as declared in *Olson* v. *Cory I*, Proposition 11 is ineffective as applied to the protected class of judges because it is in derogation of the contracts clause of the federal Constitution.

b. Is Proposition 11 ineffective as applied to the protected class of judges because it is in derogation of the due process clause of the 14th Amendment to the federal Constituion? Yes.

*Olson* v. *Cory I, supra,* 27 Cal.3d 532 states at page 540: "The 1976 amendment, in addition to impairing the vested rights of judges in offices, also impairs those of judicial pensioners."

If a state impairs a vested contractual right without meeting the *Blaisdell* criteria (*Home Building and Loan Assn.* v. *Blaisdell, supra,* 290 U.S. 398), it falls afoul of the contracts clause of the federal Constitution. If a state impairs a *vested* right which does not happen to arise out of contract (e.g., a *vested* property interest) there may be an infringement of the 14th Amendment to the federal Constitution.[6] This is one aspect of the doctrine of substantive due process which has survived the decline in popularity of that concept in the 1940's when applied to state interference with personal rights.

Even if there were no contracts clause in the federal Constitution, state action impairing a vested right which does not meet the appropriate constitutional criteria permitting impairment should be regarded as contrary to the due process clause in the 14th Amendment.[7]

Since the protected class of judges possesses *vested* rights (which incidentally happen also to be *vested contractual rights*), infringement by the State of California of these *vested* rights is in derogation of the due process clause of the federal Constitution.

---

[6]Hale, *The Supreme Court and the Contracts Clause: III* (1944) 57 Harv.L.Rev. 852, 886-887, and at pages 890-891: "The development of criteria of the reasonableness of statutes impairing contract obligations is still in an early stage. *It can be said, however, that there is at least a tendency for the contract clause and the due process clause to coalesce.* Although there is no clause expressly forbidding the federal government to pass laws impairing the obligation of contracts, any federal law impairing them in a manner which the Supreme Court deemed unreasonable would doubtless be held to be a deprivation of property without due process, contrary to the Fifth Amendment. And a state law which impaired obligations in a manner which the Court deemed reasonable would be held valid. The fact that a person is deprived of a contract right rather than a different sort of property may make legislation seem to the judges more, or less, reasonable in a particular case. *But the results might be the same if the contract clause were dropped out of the Constitution, and the challenged statutes all judged as reasonable or unreasonable deprivations of property.*" (Italics added.)
See dissent in *San Diego Gas & Electric Co.* v. *San Diego* (1981) 450 U.S. 621, 638-640 [67 L.Ed.2d 551, 564-567, fns. 2 & 3, 101 S.Ct. 1287].

[7]Since defendants do not endeavor to support Proposition 11 as an exercise by the electorate of "police power," nor would the wording or legislative history of the enactment support such an endeavor, there is no need to delve into the complex field of determining whether the vested rights of the judges otherwise protected under the federal due process clause might theoretically be encroached upon *if* there were a proper exercise of "police power." (See Cunningham & Kremer, *Vested Rights, Estoppel, and the Land Development Process* (1978) 29 Hastings L.J. 625, 633, fn. 26, pp. 663-664.)

2. ■■■ Is Proposition 11 ineffective as applied to the protected class of judges with respect to the contracts clause and due process clause of the California Constitution? No.

Proposition 11 is itself a constitutional amendment, and to the extent that it amends or replaces other provisions of the state Constitution, it must prevail as it is the latest enactment on the subject matter it covers. Article I, section 9 of the California Constitution, prohibiting impairment of obligation of contracts is superseded to the extent of the subject matter of article III, section 4, as amended.[8] Even if Proposition 11 were specific enough to repeal the California due process clause as to judicial salaries, it would not be dispositive of the case because of the federal constitutional provision, *supra*.

Aside from the federal constitutional provisions, discussed above, there is no inalienable right or natural law which might arguably be above the California Constitution. (See *Nougues* v. *Douglass* (1857) 7 Cal. 65, 69-70.)

Since there is no basis for contending that the effect of article III, section 4, as amended, is modified or controlled in any way by any prior provision of the California Constitution, Proposition 11 is valid and effective with respect to California (in contrast to federal) constitutional principles and law.

The trial court in its declaratory judgment "... declares that ... Proposition 11 ... cannot constitutionally be applied ... to deprive judges ... of their vested rights under the contract and due process clause of the United States *and California* Constitutions." The court also "... declares that justices ... have vested rights under the contract and due process clauses of the United States *and California* Constitutions...." (Italics added.) The words "and California" in the declaratory judgment are used in error and in this respect the judgment must be modified.

---

[8]If there were any doubt as to whether California Constitution, article III, section 4, as amended, supersedes the earlier constitutional provisions, the printed arguments on the ballot clearly show that the intent of Proposition 11 was to overturn *Olson* v. *Cory I* and that any disparity in judges' salaries was to be swept away, despite any contrary reasons which might theretofore have existed. These printed arguments may be properly used in interpreting a constitutional amendment. (*Miro* v. *Superior Court* (1970) 5 Cal.App.3d 87, 96-97 [84 Cal.Rptr. 874].)

3. ▮ Do the doctrines of res judicata and estoppel by judgment preclude defendants from relitigating issues determined in *Olson* v. *Cory I* as to:

a. Issues falling within the federal Constitution? Yes.

If the doctrines of res judicata and estoppel by judgment apply to *Olson* v. *Cory II* by reason of the effect of *Olson* v. *Cory I*, then plaintiffs would be entitled to judgment for that reason alone. The factual issues are the same and many, but not all, of the legal issues are the same. Defendants contend that there are changed conditions of law since passage of Proposition 11 and for that reason the doctrines of res judicata and estoppel by judgment should not act as a bar.

Tentative Draft No. 4 (1977) Restatement Second of Judgments, section 68.1 contains the language: "Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

"· · · · · · · · · · · · · · ·

"(b) The issue is one of law and (i) the two actions involve claims that are substantially unrelated, or (ii) *a new determination is warranted in order to take account of an intervening change in the applicable legal context* or otherwise to avoid inequitable administration of the laws. . . ." (Italics added.)

There has been an intervening change in the legal context since *Olson* v. *Cory I*, namely the passage of Proposition 11. But has there been a change in the *applicable* legal context? There has been no change in the federal Constitution or decisions interpreting it since *Olson* v. *Cory I* that would affect the applicable federal constitutional doctrines.

Appellants urge that because *Olson* v. *Cory I* is "erroneous" the doctrines of res judicata and estoppel by judgment should not apply. Aside from the federal constitutional issues discussed above there is no principle of inalienable right, natural law, or simple justice which would compel this or any other court to disregard the salutary principles of res judicata or estoppel by judgment on such grounds alone.

In *Federated Department Stores, Inc.* v. *Moitie* (1981) 452 U.S. 394 [69 L.Ed.2d 103, 101 S.Ct. 2424] the question was whether the Ninth

Circuit created an exception to the doctrine of res judicata. That court had held that res judicata does not bar relitigation of an unappealed adverse judgment where other plaintiffs in similar actions against common defendants successfully appeal the judgments against them. The United States Supreme Court reversed this decision, stating at page 398 [69 L.Ed.2d at page 109]: "Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."[9]

---

[9] In *Federated Department Stores, Inc.* v. *Moitie, supra,* 452 U.S. 394, the court also stated at page 401 [69 L.Ed.2d. at page 110]: "The Court of Appeals also rested its opinion in part on what it viewed as 'simple justice.' But we do not see the grave injustice which would be done by the application of accepted principles of res judicata. 'Simple justice' is achieved when a complex body of law developed over a period of years is evenhandedly applied. The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata.*' *Heiser* v. *Woodruff* 327 U.S. 726, 733, (1946). The Court of Appeals' reliance on 'public policy' is similarly misplaced. This Court has recognized that '[p]ublic policy dicates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.' [Citation.] We have stressed that '[the] doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, "of public policy and of private peace," which should be cordially regarded and enforced by the courts.... '"

In this respect there may be a distinction to be drawn between the doctrine of res judicata and that of estoppel by judgment. In *Chern* v. *Bank of America* (1976) 15 Cal.3d 866 [127 Cal.Rptr. 110, 544 P.2d 1310], the court stated at page 872: "We acknowledge, further, a sound judicial policy against applying collateral estoppel in cases which concern matters of important public interest. In *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control* (1962) 57 Cal.2d 749 . . ., for example, we declined to give estoppel effect to bar an administrative agency from relitigating the issue of whether a certain practice by a defendant constituted sufficient cause to revoke a liquor license, noting that the statute authorizing the revocation of licenses 'concerns the public interest in an industry requiring close supervisions.' . . . (2 Davis, *Administrative Law Treatise* (1958) § 18.03, pp. 558-559.)" (*Federated Department Stores, Inc.* v. *Moitie, supra,* 452 U.S. 394, 402 [69 L.Ed.2d 103, 111], conc. opn. of Blackmun, J., and Marshall, J.)

This distinction between the effect of res judicata and estoppel by judgment is recognized in Restatement Second of Judgments (Tent. Draft No. 4, April 15, 1977 § 68.1): "Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: . . . (e) There is a clear and convincing need for a new determination of the issue (i) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (ii) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (iii) because the party sought to be concluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial ac-

b. ■ As to issues falling within the California Constitution, the doctrines of res judicata and estoppel by judgment do not apply so as to give conclusive effect in *Olson* v. *Cory I.* Since Proposition 11 constitutes a change in the California law, there is such a change of circumstances that defendants would have been entitled to relitigation of the issues but for the controlling effect of federal constitutional issues.

4. ■ Does the doctrine of stare decisis compel this Court of Appeal to uphold plaintiffs' rights as adjudicated in *Olson* v. *Cory I* as to:

a. Issues falling within the federal Constitution? Yes.

Defendants contend that this Court of Appeal is not obliged to follow the decision of the California Supreme Court in *Olson* v. *Cory I.* Although the Supreme Court of California is free to overrule its own prior decisions (*County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 679 [312 P.2d 680]; *Hart* v. *Burnett* (1860) 15 Cal. 530, 600-601), the doctrine of stare decisis compels lower tribunals to follow the California Supreme Court whatever reason the intermediate tribunals might have for not wishing to do so. This rule is absolute and there are no exceptions. (*Auto Equity Sales Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].

Defendants contend that stare decisis does not govern because the issues are ones of federal law and that we should look to the United States Supreme Court and not to the California Supreme Court for guidance. We are not confronted here with a United States Supreme Court case squarely holding one way, and the California Supreme

---

tion." (In the tentative draft, Rest.2d Judgments, the term res judicata is called "claim preclusion"; and the term estoppel by judgment, also known as collateral estoppel, is called "issue preclusion.")

Comment on clause (e) in section 68.1 observes: "g. *Rationale.* As stated in the introduction to Title E, the policy supporting issue preclusion is not so-unyielding that it must invariably be applied, even in the face of strong competing considerations. There are instances in which the interests supporting a new determination of an issue already determined outweigh the resulting burden on the other party and on the courts. But such instances must be the rare exception, and litigation to establish an exception in a particular case should not be encouraged. Thus it is important to admit an exception only when the need for a redetermination of the issue is a compelling one."

None of the reasons for permitting relitigation of the issues in *Olson* v. *Cory I*, as described in *Chern* or Tentative Draft No. 4, section 68.1, *supra*, exist in *Olson* v. *Cory II.* Morever the relationship between *Olson* v. *Cory I* and *Olson* v. *Cory II* rests upon res judicata, and not merely estoppel by judgment; hence *Federated, Chern* and section 68.1(e) are reconcilable with respect to the issues in this case.

Court holding to the contrary. We do have a situation in which the California Supreme Court in *Olson* v. *Cory I* is in complete accord with applicable United States Supreme Court precedents that apply federal constitutional doctrine to state contract rights. Hence we do not even have to consider the effect of *Jefferson* v. *Chronicle Publishing Co.* (1952) 108 Cal.App.2d 538, 539 [238 P.2d 1018, 241 P.2d 20] teaching that intermediate tribunals must look to decision of the California Supreme Court upon questions of federal constitutional law.

b. Issues falling within the California Constitution.

For the same reasons as are set forth in paragraph 3. b., *supra*, we reach the same conclusions.

The judgment of the trial court is corrected as set forth in paragraph 2, *supra*, by striking out the words "and California" in the two places where such words occur, and as modified herein the judgment is affirmed. Respondents shall be entitled to their costs on appeal.

Ashby, Acting P. J., and Hastings, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 8, 1982. Bird, C. J., was of the opinion that the petition should be granted.